13566

## LAWRENCE v. SOUTHERN RAILWAY, CAROLINA DIVISION
(167 S. E., 839)

2

January, 1929.

*Messrs. N. B. Barnwell* and *Frank G. Tompkins,* for appellant,

*Messrs. J. D. E. Meyer, Stoney & Crosland* and *J. C. Long,* for respondent,

January 30, 1933.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

Action for damages to person and property growing out of a collision between automobile and standing train of freight cars.

The cause was tried before Circuit Judge M. M. Mann and a jury at the April, 1930, term of the Court of Common Pleas for Charleston County, and resulted in a verdict in plaintiff's favor of $25,000.00 actual damages for personal injuries and of $1,000.00 for property damages. It had been tried twice before, resulting in a mistrial each time

From judgment duly entered comes this appeal upon numerous exceptions.

Briefly summarized, the complaint set forth that on November 17, 1928, in the nighttime, about 1:45 a. m., the defendant, in the operation of a train of freight cars across King Street, at Simmons Street, two public streets of the City of Charleston, blocked and obstructed the crossing; that in the train, and standing immediately upon the crossing, was a car whose doors were open, so that the street

lights thereabout shone through the open windows, creating a deceptive and dangerous situation for the traveler upon the highway, and decreasing the visibility of the blocking of the crossing; and that, while driving his automobile south on King Street, a much-traveled thoroughfare at all times of the day and night, plaintiff collided with the standing car on the crossing, suffering severe and permanent personal injuries and damage to his automobile.

The allegations of negligence and willfulness are sixteen in number, but need not be set out here.

Defendant by its answer denied responsibility for the collision; charged that plaintiff's injuries and damages were due solely to his own negligence and willfulness; that his own negligence and willfulness, in the particulars set out, contributed to his injuries as a proximate cause without which they would not have occurred; and that plaintiff, at the time he was injured, was acting in violation of law in exceeding the speed limits of both State and city, which unlawful acts contributed to his injury. It also set up a counterclaim for damages to the box car.

On the trial, defendant's motions for a nonsuit and the direction of a verdict in its favor were refused.

The exceptions are twenty-six in number, but, by grouping them as appellant has done, much time and discussion may be saved.

We shall first consider those addressed to the Court's refusal of defendant's motions for a nonsuit and directed verdict. These were predicated, in substance, upon the following grounds: (1) Contributory negligence of plaintiff, the proximate cause of his injury and damage; (2) no evidence of negligence or willfulness on part of defendants; (3) plaintiff's own negligence and recklessness was the proximate cause of his injury and damage; (4) plaintiff's injuries and damage were due to an intervening cause, to wit, the alleged excessive speed at which he approached the crossing.

These exceptions have to do with negligence and willfulness in one form or another. The record herein is voluminous, but we have given it tedious and careful consideration. There is conflicting testimony on the major points at issue. Under the decisions of this Court, we are of the opinion that the issues thus raised were properly questions for the jury. This Court is not required to pass on the weight of the testimony. *Neal v. Southern Rwy.,* 162 S. C., 288, 160 S. E., 837.

The vast majority of the remaining exceptions assail, in a number of particulars, the soundness of the Court's charge to the jury.

One group assigns error with respect to the charge on contributory negligence. A careful reading of the portion of the charge excepted to reveals that the subject at the time under discussion by the Court was not contributory negligence but proximate cause. At the point in question the Court was undertaking to define and illustrate the meaning of proximate cause in the law of negligence. He was not then attempting to define contributory negligence to the jury.

Appellant complains that in effect by this charge its defense of contributory negligence was eliminated. We do not find, however, that defendant pleaded contributory negligence in this case. As has been so often pointed out, the defense of contributory negligence, to be availed of, must be pleaded. To be a good plea it must, at least conditionally, admit negligence on the part of the pleader and avoid liability on the ground of the concurring negligence of the other party. It is essentially a plea in confession and avoidance. An approved definition is: "Contributory negligence is a want of ordinary care upon the part of a person injured by the actionable negligence of another combining and concurring with that negligence, and contributing to the injury, as a proximate cause thereof, without which the injury

would not have occurred." 7 A. & E. Enc. Law (2d Ed.), 371.

The answer of defendant used this language: "Defendant alleges that any injuries received by plaintiff and any damage to his automobile were due to his own negligence and want of care, which contributed to his injuries as a proximate cause thereof without which the said injuries and damage would not have occurred" in the particulars set forth.

In stating to the jury the defenses of defendant, the trial Judge said: "The defendant answers that complaint and it says, in substance, in its first defense that while Mr. Lawrence was driving his car on the highway at this time he ran into the defendant's train." (Then follows the narrative of defendant's position as to plaintiff's injuries and the claim of defendant that plaintiff's negligence and recklessness was the sole cause of his injury.)

The Court continued: "Another defense is that his injuries were due to his own negligence and want of care which contributed to his injuries as a proximate cause in the following alleged acts of negligence; these are brief and I will read them to you.  *  *  *  Then for another defense they say that his injuries were due to his wilfulness and wantonness on this occasion as the proximate cause of his injuries and reiterates these specifications, or acts of negligence as wilful and wanton on his part. The next defense is that at the time he was injured he was acting in violation of law by speeding his car in excess of the legal allowance of speed; and that by reason of these violations of law, which contributed as a proximate cause to his injuries he cannot recover."

The trial Judge, it appears, construed the answer of defendant as not including the plea of contributory negligence. No exception was taken to this statement of the issues. Defendant cannot now complain. A charge, even if erroneous, on a matter not in issue, cannot be considered as prejudicial.

Besides, defendant by its formal requests got the benefit of the principles for which it now contends and to which, under the pleadings, it was not entitled, upon proper objection. We find no reversible error here.

Among its specific requests to charge defendant presented the following:

"I further charge you that the statutes and ordinances regulating the speed and equipment of motor vehicles on the city streets and the public highways of the State are regulations for the prevention of accidents and concerning the responsibility therefor.

"Court: I charge you that.

"If, therefore, a motor vehicle is being operated in violation of the laws governing speed on the public highway, and a collision occurs whereby a person is injured the presumption arises that the failure to observe the law in such particulars was a proximate cause of the injury."

"The Court: I refuse to charge you that."

The trial Judge charged the first paragraph of this request, but refused to charge the second. A specific exception is addressed to such refusal.

The language of the portion refused is patterned upon that of this Court in *McBride v. A. C. L. R. R. Co.,* 140 S. C., 260, 138 S. E., 803, 807, where it was said: "From our consideration of this question, we are satisfied that the proper construction of the statute leads to the conclusion that when a person is injured by a collision with the engines or any car or cars of a railroad corporation at a crossing, and the railroad failed to give the statutory signals at such time and place, the presumption arises that the failure to give the signals is the proximate cause of the injury, since such injury is the natural and probable consequence of the failure to give the signals and is the very injury intended to be prevented by the statute. It must be borne in mind that this presumption does not mean that the causal relationship between the failure to give the signals and the injury is

shown conclusively. The presumption merely establishes a *prima facie* case, which may be overcome by testimony, whether given for the plaintiff or for the defendant."

With particular reference to the crossing signal statute, Mr. Justice Stabler, speaking for the Court, further observed in the McBride opinion: "The signal statute, as shown by the title to Article 7 of the Code, is a regulation for the prevention of accidents and concerning the responsibility thereof. The Legislature evidently had in mind that injury to person or property was very likely to occur at a railroad crossing unless proper warning of the approach of trains was given to travelers, and intended by the statute to prevent such injury by requiring the railroad to give certain definitely described signals."

By its exception to the Court's refusal of the above request, defendant now asks this Court to extend the principle of the *McBride case* to all cases involving the violation of any regulatory statute or ordinance, and especially those enacted to regulate the operation of motor vehicles upon the highways of the State.

The signal statute (Code 1932, § 8355) by its terms fixes the duty of the railroad company at a public crossing, and imposes upon it a degree of liability upon its failure to obey the legislative mandate differing from that which would ordinarily exist in the circumstances.

The General Assembly, no doubt, was moved to enact this particular legislation by reason of the increasing number of accidents at railroad crossings due to the failure of trains using the public crossings to give signals of their approach or because of inadequate signal devices. The Courts, after the adoption of the statute, experienced to a greater degree an alarming increase of crossing cases. Recurring instances of failure to comply with the requirements of the statute were brought under the Court's observation. The probable consequence of the failure to give the statutory signals at crossings was forcibly impressed on the Court's attention.

Continued violation of the statute was producing the very injuries the statute was designed to prevent. In brief, the result of this experience and observation moved the Court to declare in *Strother v. S. C. & G. Rwy.*, 47 S. C., 375, 25 S. E., 272, 273, a rule of evidence governing railroad crossing accidents where a violation of the statute is shown. This judicial declaration, in the light of experience, was: "When the defendant violates the requirements of the statute as to ringing the bell or sounding the whistle, and a person is injured by its locomotive, while crossing a highway, street, or traveled place, it will be presumed that such negligence caused the injury, unless the testimony shows that the injury was caused in some other manner."

To paraphrase the language of *Danner's case,* 4 Rich. Law, 329, 55 Am. Dec., 678, *infra,* the frequent repetition of injury at railroad crossings by reason of failure of the railroad to comply with its statutory duty created a presumption that such injuries were due to disobedience of the legislative mandate.

For a Court, however, judicially to declare a presumption of fact to exist under given conditions and circumstances, the result presumed must be one "which a reasonable man would draw from certain facts which have been proved to him. Its basis is logic, its source is probability; it rests on the observed connection between facts." Greenleaf (15th Ed.), 72.

More aptly expressed, perhaps: "Presumptions arise from the doctrine of probabilities. The future is measured and weighed by the past, and presumptions are created from the experience of the past. What has happened in the past, under the same conditions, will probably happen in the future, and ordinary and probable results will be presumed to take place until the contrary is shown." 20 R. C. L., 186.

On the basis of these principles there have grown up in the law of evidence a large body of presumptions, both of law and fact, which are recognized and applied in a multi-

tude of situations. The presumption of the receipt by the addressee of a letter properly stamped and mailed; of the possessor of stolen property being the thief; of death after an absence of seven years, are common illustrations.

In the field of torts, we find presumptions of negligence arising from long delay in the delivery of a telegram (*Baker v. Western Union Tel. Co.*, 87 S. C., 174, 69 S. E., 151); of injury to a passenger through an agency or instrumentality of the carrier (*Sutton v. Southern Rwy.*, 82 S. C., 345, 64 S. E., 401); through communicated fires by railroads (*Hutto v. Seaboard Air Line Rwy.*, 81 S. C., 567, 62 S. E., 835); of injury to live stock on the railroad right of way (*Danner v. South Carolina Rwy.*, 4 Rich. Law, 329, 55 Am. Dec., 678), and others.

They are all, however, rebuttable presumptions. They arise and have been recognized by the Courts either because of necessity or as the result of the experienced course of human affairs.

As was said in *Danner's case, supra:* "The frequent repetition of injury, under similar circumstances, creates a presumption of negligence."

In adopting and enforcing such presumptions, however, the Courts have been careful to limit them to the set of facts or conditions which brought them into being. See *Wilson v. Wilmington & M. Railroad Co.*, 10 Rich. Law, 52, in which the rule in *Danner's case* was limited to the killing of live stock, the Court refusing to extend the principle to the killing of a dog.

"Presumptions can never be safely admitted unless observation and experience have shown that, in the large majority of instances, certain facts have caused, or been followed by, certain results." 10 R. C. L., 868.

Human experience and observation have not yet shown, in the case of motor vehicles, that the violation of a statute or ordinance in every case can safely be presumed to have proximately caused the injury or dam-

age. There are too many other elements that enter, or may enter, into the situation. Sometimes it has been necessary technically to violate a statute or ordinance in order to avoid an accident. Indeed, this Court has held that it is the duty of the automobile operator to violate the law, if by doing so injury may be avoided. *Walker v. Lee,* 115 S. C., 495, 106 S. E., 682; *Sims v. Eleazer,* 116 S. C., 41, 106 S. E., 854, 24 A. L. R., 1293, and others.

Can it be reasonably presumed, for instance, that the speed of an automobile at eighteen miles an hour in violation of an ordinance permitting only fifteen is the proximate cause of injury suffered in a collision between the offending auto and another?

"Did the difference in speed between 15 and 18 miles per hour contribute to the collision to an extent and in a manner that would enable the trial Court to say as a matter of law [we interpolate, in the absence of other evidence] that without this negligence, which consisted in the slightly excessive speed, the collision would not have occurred? We think the evidence affords no adequate basis for that conclusion." *Coleman v. Levkoff,* 128 S. C., 487, 122 S. E., 875, 877.

Under the signal statute there is but *one* statutory duty imposed on the railroad. That duty is to give the required signals. There is no limit to the speed at which the locomotive may travel, except the rules of the company and the general rule of ordinary care in the circumstances. The violation of that single statutory command we have held to be negligence *per se* and presumptively the cause of injury resulting therefrom. On the other hand, we have consistently held that, upon clear proof that the signals were given and the statute complied with, no liability arises. The purpose of the signal statute was to warn the unwary. It was designed to arouse the traveler upon the highway approaching a railroad crossing who might be momentarily abstracted or inadvertent. For this reason, ordinary negligence of the traveler under the express terms of the statute

does not defeat his right of recovery, if the signals are *not* given. Only gross or willful negligence or violation of law is a defense reserved to the railroad in the absence of the statutory warning.

On the other hand, in respect to motor vehicles upon the public highways, manifold statutes and ordinances impose a variety of regulations. In connection with their operation upon the highways and streets, there exist also, many additional considerations, such as grades, sufficiency of brakes, distances, congestion or lack of congestion of traffic, and other attending circumstances.

The railroad statute was enacted solely to protect the traveler using, or about to use, the crossing. Traffic statutes and ordinances, however, were designed, not only for the protection of the "other auto" or person using the highway, but for the protection of the operator of the offending car himself and the occupants thereof—manifestly, a much broader field of coverage than the signal statute.

It is true this Court has consistently held that the violation of a statute or ordinance is negligence *per se;* and that doctrine has been applied both to railroads and automobiles.

With respect to the operation of motor vehicles, however, we have stated: "Although the violation of a statute is held to be negligence *per se,* there must be a causal relation between such act and the injury to render the defendant liable, and such violation must be the proximate cause of the injury." *Cirsosky v. Smathers,* 128 S. C., 358, 122 S. E., 864, 866.

This rule has been uniformly followed notably in several recent decisions. *Coney v. Cox,* 165 S. C., 26, 162 S. E., 596; *Ready v. Barnwell County,* 167 S. C., 62, 165 S. E., 676; *Fann v. State Highway Dept.,* 167 S. C., 84, 165 S. E., 785, 789.

The presumption of negligence which was declared to arise from the operation of a vehicle on the wrong side of the

road, in *Bowers v. Carolina Public Service Co.,* 148 S. C., 161, 145 S. E., 790, and *Sims v. Eleazer,* 116 S. C., 41, 106 S. E., 854, 24 A. L. R., 1293, in no way affects, in our opinion, the rule above stated.

Though we have given extended consideration to this exception, we think the particular point presented is foreclosed to appellant by the decision of this Court in *Jones v. Carpenter,* 160 S. C., 401, 158 S. E., 823, rendered since the oral argument of this appeal. In that case (an automobile collision case) the trial Judge charged, at the request of plaintiff.

"The jury is instructed that the violation of a criminal statute which is designed to promote the safety of travel upon the public highways of this State, constitutes negligence *per se; and if an injury to person or property results from such violation,* there is a presumption of law that such violation is the proximate cause of the injury; whatever questions are involved in the statement of the principle being left to the jury.

"I further instruct you when all the evidence is in that the evidence may show that the presumption is not well founded and after all it becomes a question of what the evidence shows you." (Italics ours.)

No extended discussion was given to an exception taken by the defendant to this charge. The author of that opinion, Mr. Justice Carter, merely dismissed it with the statement that "appellants were in no way prejudiced by the use of the language complained of" the implication being that, though erroneous, it was not prejudicial in the light of the entire charge. However, Mr. Justice Cothran concurred solely on the ground that "the italicized phrase in the charge saves it from error."

That is also our present view. If the premise be, as this request stated, that the *injury resulted from such violation,* the presumption logically follows that such violation proximately caused the injury.

In the instant case, however, no such premise was presented to the Court. The bald proposition was requested that upon a violation of law appearing and a collision occurring, the presumption arises that the failure to observe the law was a proximate cause of the injury. The premise that the injury must first result from such violation before the presumption arises was absent.

Moreover, aside from the general considerations above noted, his Honor could not have properly charged this request in the form presented. To have done so was to have told the jury without qualification that, where a violation of a safety statute or ordinance is shown, there arises an *unqualified* presumption that such violation was the proximate cause of the injury. That is not the law, even of the *McBride case,* upon which the request was predicated. The language of this request totally ignored the qualification that the presumption is a rebuttable one. In effect it would have left the jury under the impression that under the circumstances stated there was a conclusive presumption of law that the violation of the safety statute was the proximate cause of the injury.

For the reasons stated, there was, in our opinion, no error in refusing this request. It was unsound from every aspect.

We have given careful consideration to the other exceptions imputing errors in the charge of the Court, but we have not been convinced of their prejudicial character.

"The whole charge must be considered in determining if there was prejudicial error." *Key v. Carolina & N. W. Rwy.,* 165 S. C., 43, 162 S. E., 582, 583.

With respect to Exception 9 which is directed to alleged improper argument of counsel to the jury, the record does not support the charge as made and cannot therefore be considered. *Tunstall v. Lerner Shops,* 160 S. C., 557, 159 S. E., 386; *White v. Southern R. Co.,* 142 S. C., 284, 140 S. E., 560, 57 A. L. R., 634.

The refusal of a new trial was in the sound discretion of the trial Judge.

"It is not error for a Circuit Judge to refuse a new trial, because he was not disposed to put his judgment against that of the jury." *Dunlap v. Robinson,* 97 S. C., 79, 81 S. E., 428, 429; *Robinson v. Telegraph Co.,* 101 S. C., 20, 85 S. E., 436.

The question of the excessive amount of the verdict was likewise a matter for the determination of the trial Judge. *Dickson v. Inter-Carolinas Motor Bus Co.,* 161 S. C., 297, 159 S. E., 625.

Being satisfied that no prejudicial error was committed herein, it is ordered that the judgment herein appealed from be affirmed.

MESSRS. JUSTICES STABLER and CARTER concur.

MR. JUSTICE COTHRAN and MR. ACTING ASSOCIATE JUSTICE JOHN I. COSGROVE did not participate.