13802

### MYERS v. ATLANTIC COAST LINE R. CO.

(173 S. E., 812)

Before SHARKEY, J., Civil Court, Florence, May, 1932.

*Mr. F. L. Willcox,* for appellant,

*Messrs. Truluck & Truluck* and *McEachin & Townsend,*
for respondent,

March 12, 1934.

The opinion of the Court was delivered by Mr. CHIEF JUSTICE BLEASE.

The first trial of this case, resulting in a judgment in favor of the plaintiff, was reversed by this Court, and the case remanded to the County Court of Florence County for a new trial. See *Myers v. A. C. L. Railroad Co.,* 169 S. C., 310, 168 S. E., 730. We held that, under the terms of Section 8356 of the Code, a railroad company was not required to maintain at a road crossing two crossing signs, but that one such sign, erected in the proper manner, with the words "Railroad Crossing" printed in large letters on each side thereof, was a compliance with the law. Under that construction of the statute, we concluded there was reversible error on the part of the County Judge in refusing the defendant's motion to strike from the complaint, as irrelevant and redundant matter, and as not stating a cause of action, certain language therein, which appeared to declare as an act of negligence on the part of the railroad its failure to maintain two crossing signs at the crossing where the plaintiff's alleged injury occurred.

In our former decision, we also held that the defendant's motion for a directed verdict, "made on the ground that plaintiff's injury was due to his violation of law, and to his negligence and gross negligence on his approach to the crossing," was properly refused, since "The conflicting testimony required the submission of these questions to the jury."

The second trial, now being reviewed in an appeal by the defendant, again resulted in a verdict and judgment for the plaintiff; the amount being considerably larger than that he first obtained.

Material allegations of the complaint were stated in full in the former opinion of the Court, and it is not necessary to here repeat all of them. It is sufficient to say that in an amended complaint the plaintiff charged that in a collision of the automobile, which he was driving, with a box car of the defendant, at a grade crossing on a public highway, he received serious bodily injuries, occasioning him great damage, which resulted from the negligence, willfulness and recklessness of the defendant in the stopping of one of its trains on a crossing on a much-used public highway and blocking and obstructing, in the nighttime, for an unreasonable length of time, the crossing, without taking any precaution, by way of light, sign, signal, flagging, or otherwise, so as to warn persons, especially a stranger to the highway (and such was the plaintiff), traveling and using the highway, of the approaching by a traveler of a railway crossing that was blocked and obstructed by a box car, and thereby made dangerous.

The exceptions of the appellant test the correctness of the ruling of the trial Judge, on its demurrer, that the complaint, as amended, stated a cause of action, and the refusal to direct a verdict for the defendant, on the ground that the testimony for the plaintiff was insufficient to show a cause of action against it.

At the beginning, we are met with a suggestion on the part of the County Judge, appearing in his rulings on the

trial, and particularly referred to by him in his order refusing a motion for a new trial, which position it seems also is advanced by the respondent, that the questions here made by the appellant have been concluded already against it by the former decision, under the principle of the "law of the case." Probably, the suggested position is correct (*Cato v. Atlanta & C. A. L. Ry. Co.,* 164 S. C., 123, 162 S. E., 239), but we do not feel disposed to rest our determination on that ground.

The questions involved in the appeal have been stated in both of the briefs submitted from the viewpoints of the respective counsel. With a due consideration of these, however, we prefer to state what we conceive to be the real and sole question for our decision.

When it is not alleged in the complaint, and sustained by some evidence, that the provisions of Sections 5829 and 8380 of the Code have been violated by a railroad company, but it is alleged, and supported by some evidence, that the company has blocked, with a box car, a public highway crossing, in a rural community, in the night, for an unreasonable length of time, without taking any reasonable precaution in the situation to warn travelers of the obstruction, and a traveler, in the absence of contributory negligence, or when the evidence as to any contributory negligence is conflicting, is injured in a collision of the vehicle occupied by him with the box car, should the case be submitted to the jury?

In Section 5829, it is made unlawful for a railroad company to permit one of its cars or locomotives to be or to remain upon or across any street, public road, or highway for a period longer than five minutes, "after notice to remove said cars has been given to conductor, engineer, agent or such other person in charge of said train." By Section 8380, the Railroad Commissioners are authorized, if they deem it necessary, upon the application of the county supervisor of a county, to require a railroad corporation "to have a

stationary flagman at any crossing, the importance of which may demand it."

Able counsel for the appellant has discussed strongly and lucidly his position, to the effect that an affirmative answer to the stated question would make nugatory the cited Code provisions; and to support that position he has referred to several cases from jurisdictions other than this. It is said, and likely correctly so, that the exact point has not been decided by this Court. Nevertheless, we are impelled to the conclusion that several of our decisions. so nearly in point, some of them conceded by appellant's fair counsel to have "possibly some bearing," properly analyzed and construed, require an affirmative answer to the question. To these we turn our attention.

First to be noticed is *Littlejohn v. Railroad Co.,* 49 S. C., 12, 26 S. E., 967, 969, not cited by appellant. The injury to the traveler, there complained of, occurred at a crossing over a public street of the Town of Gaffney, obstructed by cars of the railroad company, while the traveler was passing between two of the cars, and from a reading of the Court's decision we have the impression that the accident occurred in the daytime. The Court considered the statutory provisions now contained in Sections 8355 and 8377; the first concerning "Signals to Be Given at Crossings," and the second, "Injuries at Crossings." Neither Section 5829 nor 8380 was referred to; in fact, the former was not enacted until March 23, 1896 (22 St. at Large, p. 235), almost five years after the accident out of which the *Littlejohn case* grew. While two of the three members of the Court who heard the case only concurred in the result, Mr. Justice Gary, in his opinion, said: "If a railroad company obstructs a highway for an unreasonable length of time, or for a longer time than the law permits, unless it is without fault, the railroad company thereupon becomes a trespasser; and if a person makes a reasonable use of its cars without injury to them at a crossing, for the sole purpose of crossing the rail-

road track, the railroad company is estopped from saying that he is a trespasser. Having brought about the necessity, it cannot take advantage of its own wrong."

In *Prescott v. Hines, Director General of Railroads,* 114 S. C., 262, 103 S. E., 543, the injuries to the plaintiff occurred in a collision between an automobile in which he was riding and a train at a street crossing, in the City of Columbia, in the night. No reference to any of the cited statutory provisions appears in the report of the case. Possibly the action involved the alleged violation of a municipal ordinance, but, if so, the Court gave no consideration to that. Answering the question made by the railroad company, that a reasonable inference could not be drawn from the testimony of any actionable negligence on its part, Mr. Justice Watts, for the Court, said: "There was some evidence by which it was reasonable to infer that there was actionable negligence on the part of the defendant. There was evidence that the train was standing still, blocking one of the most traveled streets in the City of Columbia, and that the cars had no light of any kind upon them, or near them, or any guard or watchman to give warnings; that on the night in question there was a fog or smoke, that made the place where the cars were standing dark, and obscuring the same. * * * Under all of the evidence in the case, his Honor could not have granted a nonsuit, or directed verdict, as asked for by the defendant, and these exceptions are overruled."

A leading case is *Miller v. A. C. L. Railroad Co. and Camp Manufacturing Co.,* 140 S. C., 123, 138 S. E., 675, 686. The death of plaintiff's intestate occurred, in the nighttime, in a collision between the automobile, in which he was riding, and a train of cars of the Camp Manufacturing Company, being operated on the tracks of the railroad company, the cars standing upon, and blocking, a public crossing in the Town of St. Stephens, containing a population of only about six hundred people. Affirming the judgment,

this Court, through Chief Justice Watts, said several things pertinent to the inquiry before us:

"The evidence was sufficient to carry the case to the jury that the Camp Company, with consent, acquiescence, and approval of the Atlantic Coast Line, had placed and kept its train on the track of the Atlantic Coast Line Railway and across the public highway and crossing of said road, and obstructed the crossing of said highway and crossing, and it was for the jury to say whether unnecessarily and for an unreasonable length of time, and whether it was without headlights, safeguards, or warning to the public of such obstruction.   *   *   *

"There was evidence for the jury to say whether there were lights or not at the crossing, either on the train which obstructed it or on the depot. The situation was such that both companies owed the duty to the public of whatever would be reasonably adequate to protect this crossing, with the increased danger which they had caused.

"There was no light provided by town or either railroad. There was no flagman there. We see no error on the part of his Honor in submitting the case to the jury; the public has a right to be protected where a highway crosses a railroad track.   *   *   *

"It is the duty of a railroad, at common law (and outside of any statutory requirements), to give such signals at a public crossing as may be reasonably sufficient, in view of the peculiar situation and surroundings at the time, and as will give the public and individuals warning of the approach and guard them against danger.   *   *   *

"Ordinary prudence might require a particular crossing to be flagged at certain times, and not others, on account of the circumstances of extraordinary danger, and this is ordinarily a question for the jury.   *   *   *

"A railroad owes a duty to the public of not obstructing a highway, which crosses it, unnecessarily or unreasonably.   *   *   *

"Both the contention that the blocking was unnecessary and was for an unreasonable length of time, as claimed by the plaintiff, was properly submitted to the jury. * * *

"In every case in this state of an injury at a crossing (not necessarily under the crossing statute), where there were obstructions to the view, or where there were obstructions or difficulties in keeping the best lookout, or other things to divert or distract the mind, the court has held the question of gross negligence and of contributory negligence were questions for the jury."

In *Glenn v. Railway Co.,* 145 S. C., 41, 142 S. E., 801, 804, the railroad company had blocked a street crossing, in the City of Columbia, in the nighttime. The plaintiff, thinking the train was "dead," to get on the opposite side of the track attempted to climb over the standing cars, and, while he was in the act of going over, the train was moved, resulting in injuries to him. An ordinance of the city was involved in the case. It was said: "The temporary occupancy of the crossing in the course of switching operations should not be regarded as coming within the prohibition of the city ordinance on this subject, but the use should be necessary and the cars should not be allowed to remain blocking the crossing for an unreasonable length of time. The application of the ordinance, whether it is a factor for consideration in this case, is therefore for the jury. The duty also exists, where cars are at a standstill on the crossing, to give warning before they are moved. * * * The common-law requirement of taking the precautions made necessary by the particular conditions is not abrogated by the signal statute."

The case of *Pinckney v. A. C. L. Railway Co.,* 147 S. C., 227, 145 S. E., 135, 138, was a "companion case" to the *Miller case, supra,* growing out of the same accident. In affirming the judgment for the plaintiff, it was said by Mr. Justice Carter: " * * * Ordinary prudence might require such a crossing as the one in question to be flagged at certain times, and persons kept there to give notice of

danger, on account of the extraordinary danger of the place, and whether the surrounding circumstances required such precaution at the crossing in question here was a question for the jury, * * * whether there were sufficient lights at the crossing, and whether under the circumstances the defendants should have had the place lighted, were questions for the jury."

In the case of *Bober v. Railway Co.,* 151 S. C., 459, 149 S. E., 257, 260, the plaintiff, riding, at night, on a motor-truck, driven by another person, was injured when the truck collided with one of the cars of a moving train, consisting of several coal cars, at a crossing in or near the City of Charleston, presumably within the city limits. Dismissing the contention that there was no evidence of negligence, Hon. C. T. Graydon, acting associate justice, said for the Court: "When the crossing is to be occupied by a train is not known to the public in general but is known to the railroad company. Under the admitted facts in this case, the crossing in question would have been blocked for a period of several minutes with this train of black coal cars. There was no light over the crossing. There was no warning signal by light, bell, or otherwise placed at the crossing to indicate the presence of a train, and there was no flagman placed out on either side of the train to indicate its presence."

The judgment for the plaintiff, in the case of *Lawrence v. Railway Co.,* 169 S. C., 1, 167 S. E., 839, 840, was affirmed, although the defendant contended there was no evidence of actionable negligence. Summarizing the allegations of the complaint, sustained by evidence of the plaintiff, it was said: " * * * In the nighttime, about 1:45 a. m., the defendant, in the operation of a train of freight cars across King street, at Simmons street, two public streets of the city of Charleston, blocked and obstructed the crossing; that in the train, and standing immediately upon the crossing, was a car whose doors were open, so that the street lights thereabout shone through the open windows,

creating a deceptive and dangerous situation for the traveler upon the highway, and decreasing the visibility of the blocking of the crossing; and that, while driving his automobile south on King street, a much-traveled thoroughfare at all times of the day and night, plaintiff collided with the standing car on the crossing, suffering severe and permanent personal injuries and damage to his automobile."

The case of *Walker v. Southern Railway*, 77 S. C., 161, 57 S. E., 764, 12 Ann. Cas., 591, decided in 1907, not cited by counsel for either side, throws much light upon the inquiry. Especially does it seem conclusive of the question as to the effect of Section 5829 of the Code, which was Section 1375 of the Civil Code of 1902. The accident out of which the action grew occurred at a "siding at Monie or Walker's Station, in Barnwell County," presumably a very small village, if it was not at that time deemed to be altogether in a rural community. It is not definitely so stated, but we think we may correctly assume that the accident happened in the daytime. A freight train took the siding to clear for a passenger train, which did not stop at the station, but delivered mail thereat. It was the duty of the plaintiff, who was the postmaster, to take charge of the mail as soon as possible after it was thrown from the passing train. The freight train was standing between the plaintiff and the place where the bag was thrown out, and was "upon the street or public crossing." Without giving any notice of his purpose to any one in charge of the train, the plaintiff attempted to pass over the bumpers of two freight cars standing upon the crossing; without blowing the whistle, ringing the bell, or giving any other notice, the freight train was moved, and the plaintiff was severely injured. One of the main acts of negligence alleged was that the freight train had blocked the public crossing "for an unreasonable length of time, at least twenty minutes." In affirming the judgment in favor of the plaintiff, the Court considered the question raised by the railroad company as to the effect of the provisions of the

then Section 1375 (now Section 5829), "as applied to the rule declared in" the *Littlejohn case, supra.* The appellant contended that, under the section, a railroad company does not become a trespasser by obstructing a highway with its train, unless the obstruction remains longer than five minutes after notice to remove it. The Court gave expression to the opinion that there was nothing appearing to show that the legislative enactment was designed to alter the doctrine declared in the *Littlejohn case,* and said that the statute did not affect that doctrine. It was pointed out that the act merely prescribed, when a railroad company unnecessarily obstructed a public highway or crossing, that it was liable to the penalties or special remedies provided in the statute. It was expressly held, quoting from the syllabus, "a railroad company may be a trespasser by obstructing a public crossing by leaving its train standing across it for an unreasonable length of time."

It seems clear to us, therefore, that the provisions of Section 5829 of the Code have no application to the facts of the case at bar; and the respondent's cause of action, as stated in his complaint, was in no wise impaired for failure to allege, or that he was precluded of right to recover for failure to establish by evidence, that the railroad company had violated the terms of the statute. His action was not based on any negligence alleged to have grown out of a violation of statute. It was based on acts of negligence, under well-recognized common-law principles, declared in the cases which we have mentioned.

We do not see either how the failure of the respondent to allege and establish by proof that the appellant had violated the provisions of Section 8380 of the Code would deprive him of the legal right to recover for damages occasioned by the acts of negligence alleged in his complaint. So far as we are advised, there has been no construction by this Court of that statute. If "a stationary flagman" should be required to be kept at a crossing, under the order of the Railroad

Commission, and the railroad company neglected to carry out the order, and because of that negligence one was damaged in his person or property, the railroad company, under the law, would be liable for such damages, unless, of course, the contributory negligence of the one injured should be shown. The principles declared in the cited cases seem to us to bear as much upon the provision of this section as they do upon those of Section 5829.

Admitting with the appellant that in none of the cases to which we have referred was the crossing involved one located altogether without the limits of a municipality, in what may be termed a rural community, sparsely populated, and with no excessive traffic on the highways, still we do not see why the principles recognized in those cases would not be fully applicable to the latter described crossings, and perhaps even more so. A traveler, whether walking or riding in a vehicle, may naturally expect to come in contact more often in towns and cities than in rural communities with railroad crossings, locomotives, and cars. In a bustling, hustling municipality, these ways and modes of transportation are more frequently found than they are seen in rural communities. The statutes, so repeatedly mentioned, make no distinction between crossings in the most sparsely settled country districts and those in the larger cities. Likewise, we may say that the statutory regulations as to giving of warning signals at crossings make no distinction as to the classes of crossings.

On the cited authorities, it is manifest that the trial Judge correctly overruled the demurrer. Likewise, under the decisions which we have cited, it was incumbent upon him to refuse the motion for a directed verdict, since there was some evidence on the part of the respondent to establish the allegations of his complaint.

The judgment appealed from is affirmed.

ORDER ON PETITION FOR REHEARING .

On examination of the appellant's petition for rehearing, we find that certain occurrences in the lower Court were, perhaps, not made clear in the opinion of this Court. The record discloses the following:

The plaintiff's first amended complaint was demurred to by the defendant on the grounds, briefly stated, first, because it was only alleged that the train was stopped on the crossing, in the nighttime, without any precaution being taken to notify persons using the highway of the presence of the railroad tracks; and, second, because there were no allegations claiming that the defendant had violated the provisions of Sections 5829 and 8380 of the Code. After the demurrer was overruled, the plaintiff, without objection on the part of the defendant, obtained the leave of the Court to again amend his complaint so as to meet the objections set forth in the defendant's first ground of demurrer. There was no demurrer to the second amended complaint, on which the case was tried, and its essential allegations were set forth in the Court's opinion.

In the third and fourth paragraphs of the petition for rehearing, appellant says that we overlooked the fact that the demurrer was to the first, and not to the second, amended complaint. The appellant, however, is mistaken as to that; but we did not deem it necessary to go into the details now mentioned.

The case having been tried on the second amended complaint, to which there was no demurrer, and not on the first amended complaint, that complaint really passed out of the case. The exceptions of the appellant, as to the refusal of the Court to sustain its demurrer, might, therefore, very properly, have been entirely disregarded. In view of the fact, however, that, on the motion for a nonsuit, and perhaps also on the motion for a directed verdict, the appellant raised, or intended to raise, the same questions as to Sections 5829 and 8380 that were raised in the demurrer, and

its exceptions questioning the correctness of the rulings on the motion for a nonsuit, and the motion for a directed verdict, we properly considered the questions pertaining to those sections. We did not, however, pass specifically upon the other ground of the demurrer for, when the amended complaint had been again amended to meet the objections interposed by the appellant to the first amended complaint, that ground of the demurrer was clearly no longer involved in the case.

It is said in the fifth paragraph of the petition that we overlooked the fact that the undisputed testimony showed that, at the time of the collision, the train, with which the plaintiff collided, was in the act of moving out of the siding. Perhaps the railroad company did so contend, but we cannot agree that the undisputed testimony so showed. The plaintiff testified that the train was standing still at the time of the collision.

The appellant says also that there was "absolutely no testimony of any one who knew" that the highway in question was a much-traveled highway. The appellant again is viewing the testimony in the case from its own viewpoint. The plaintiff testified that the highway "was the best of a County road," that he would describe it as "a much traveled road," and, on his cross examination, he said, "I have heard a whole lot of folks say it was much used, since then, some of your witnesses."

The appellant appears to be apprehensive that this Court has decided that "when a traveler on the highway collides with a train on a crossing, and when nothing else appears," then "a jury issue is made." A reading of the question, stated by the Court to be the only one to be determined in the cause, which question was answered in the affirmative, will clearly show that the appellant's fears are without basis.

The Court discussed fully all the legal principles involved in the case; it gave the appellant the benefit of all the questions it raised, even if some of them

may not have been properly involved in the appeal; and we declared what was conceived to be the proper legal principle as applicable to the facts, viewed from the plaintiff's stand-point, as we were required to do in the consideration of a motion for a nonsuit or one for a directed verdict.

The petition for rehearing is dismissed, and the order staying the remittitur is revoked.

MESSRS. JUSTICES STABLER, CARTER and BONHAM and MR. ·ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.