## SOUTHERN RY. CO. v. TONEY.
### No. 5483.

Circuit Court of Appeals, Fourth Circuit.
July 11, 1946.

T. B. Greneker, of Edgefield, S. C. (F. G. Tompkins, of Columbia, S. C., on the brief), for appellant.

B. E. Nicholson, of Edgefield, S. C., for appellee.

Before GRONER, Chief Justice, U. S. Court of Appeals for the District of Columbia, DOBIE, Circuit Judge, and CHESNUT, District Judge.

DOBIE, Circuit Judge.

Mark Toney instituted, in a state court of South Carolina, a civil action against the Southern Railway Company. This action was removed to the United States District Court for the Western District of South Carolina.

The complaint sought damages for the destruction of plaintiff's automobile and for personal injuries suffered by plaintiff when the automobile collided with a tank car, a part of defendant's train which was standing across and blocking a highway, on which plaintiff was driving, in the Town of Trenton, South Carolina. A jury awarded Toney $420 for the destruction of the automobile and $400 for the personal injuries received by him as the result of the collision. The Southern Railway Company, defendant, has duly appealed.

Only two questions are before us on this appeal: (1) Was there sufficient evidence to justify the trial judge in submitting to the jury the question of the primary negligence of the defendant-railroad? (2) Was the plaintiff guilty of contributory negligence as a matter of law? The defendant claims that the trial judge erred in refusing to direct a verdict in favor of the defendant on each of these grounds. Since we think the trial judge was correct in refusing to direct a verdict for the defendant, we must affirm the judgment of the District Court.

The question of the sufficiency of the evidence to take the question of the railroad's negligence to the jury, we think, must be answered in the affirmative. Highly persuasive on this question are several leading South Carolina decisions. Thus, in Funderburk v. Powell, 181 S.C. 412, 187 S.E. 742, at page 745, Associate Justice Fishburne (italics ours) said:

"A careful study of the entire evidence, together with an examination of the photographs introduced by the defendant, showing the situs, convinces us that *the trial court was correct in submitting the issue of actionable negligence on the part of the railroad company to the jury.* The plaintiff testified that when the car she occupied emerged from beneath the overhead electric street light, they entered a dark area. It may be that that dark area was intensified by the shadow cast by the overhanging eave of the blocking express car, the doors of which were closed. It evidently presented a solid wall. *The train had blocked the crossing for a minute and a half,* and doubtless would have occupied the crossing for several minutes longer while the fireman was drawing water from the water tank. The headlight of the locomotive—thirty or forty feet beyond the crossing—illuminated only the space in front of it. It afforded no light on the crossing itself. The train *coaches attached to the rear of the blocking express car shed no light upon the crossing.* The testimony for the plaintiff tended to show that it was a real *dark night and that the weather was somewhat foggy.* Other witnesses testified that the night was dark, but clear. *No flagman or other attendant with a light was stationed at the crossing to give warning to travelers that the crossing was blocked. Nor was there any other signal or device provided to give notice of the presence of the train on the crossing.*"

The facts in the Funderburk case were strikingly similar to the facts in the case before us. See, also, Prescott v. Hines, 114 S.C. 262, 103 S.E. 543; Lawrence v. Southern Railway, 169 S.C. 1, 167 S.E. 839; Kneece v. Southern Railway Co., 187 S.C. 195, 197 S.E. 673. And see, particularly, the opinion of Associate Justice Stukes in Bingham v. Powell, 195 S.C. 238, 11 S.E. 2d 275.

In the Funderburk case the train had been at the crossing a minute and a half. The testimony in the instant case is not quite so precise. Thomas Jones, witness for the defendant, who was riding on the engine of the train, was asked:

"Mr. Jones, from the time you got out of the engine in which you were riding until you got back to the crossing, how long would you say that was, sir?" His reply was:

"I would say it wasn't more than three minutes." Captain Coleman, conductor of the train, thus testified:

"Q. Captain, of course you were on the rear of the train so you would be on the southern end near Augusta, is that correct? A. That is right.

"Q. After your train stopped, Captain, what did you do, sir? A. I got out and started up the side of the train, making train inspections, looking it over to see if I could find anything wrong.

"Q. You were going toward the crossing? A. Yes, sir.

"Q. And beyond the crossing was the water tank? A. Yes, sir.

"Q. Captain, what, if anything, unusual did you hear or see as you were going along? A. When I got out of the caboose I heard a crash but I didn't know what it was and didn't pay much attention to it. I got up about seven or eight cars from the cab and I heard someone calling me and I crossed over on the other side and Conductor Sligh was coming after me and said somebody had run into the side of the train.

"Q. Did you go on up to the crossing? A. Yes, sir, I rushed on up there.

"Q. How soon after your train stopped did you get out of the caboose? A. Immediately.

"Q. And how soon after you got out did you hear the collision? A. I reckon it was about three minutes. I had walked about six or seven cars."

Though the question of whether plaintiff was guilty of contributory negligence is not quite so clear, we still think the trial judge ruled correctly that the question of contributory negligence was one for the jury. Plaintiff was alone in the car at the time of the collision and the evidence on the particular point now before us is almost entirely his own testimony, which could hardly be characterized as altogether clear and unequivocal.

Plaintiff did testify that he was thoroughly familiar with the crossing, that his speed at the time of the collision was not over

thirty miles an hour, that he looked to the right and left before driving on the tracks and that his dimmed lights shone under the oil car blocking the highway, without revealing the presence of the car, and showed clear on the road "beyond the track on the other side."

Plaintiff testified that the night was cold (the time was December) and somewhat foggy, with a misting rain at the time of the collision. As to whether the windows of the car were up (closed) or down (open), plaintiff first stated that he did not remember, then said: "It was cold and I expect they (the windows) were" (up or closed). To the question: "So you didn't listen for any train, did you, sir?" plaintiff replied: "Well, I'd say yes, I listened because I always listen for them." Later, this colloquy ensued:

"Q. Let's get right down to this question now. My question was, if you state that your doors were closed, your windows were up, did you let your windows down to listen to see if there was a train? A. Well, at night you don't have to listen. You will see the lights of them coming, if they are coming.

"Q. So, then, you didn't listen? A. No; I didn't say I didn't listen. I didn't let down my glasses and get out of the car and look.

"Q. I ask you now, did you listen? A. I hadn't thought of that particular part. I couldn't say I did or didn't."

Since the train of tank cars was standing at the time of the collision (while the engine was taking water), there is nothing in the record to show that even if plaintiff had stopped, lowered his windows and listened intently, any sound revealing the presence of the train would have been heard by him.

To the question: "And you didn't slow down, did you?" plaintiff's reply was: "Well, I don't remember that particular part. I expect I did. The crossing was there. I don't reckon I slowed down because I wasn't going so fast to slow down." Defendant challenged the testimony of plaintiff that his lights shone clear on the other side of the highway beyond the tracks, without revealing the presence of the oil car, on the ground of physical impos-

sibility since "It is uncontradicted that the space between the ground and the bottom of the car on the crossing could not have been greater than nineteen to twenty-eight inches."

The law of South Carolina on when a plaintiff is guilty of contributory negligence as a matter of law has been declared in a number of cases. There appear to be no South Carolina statutes which require specific conduct on the part of a motorist before crossing a railroad track. Statutes in some states, for example, require the motorist to come to a full stop; other statutes require a definite reduction of speed, such as to five miles an hour. The general principle is thus set out in the second headnote to Bingham v. Powell, 195 S.C. 238, 11 S. E.2d 275:

"The determination of question of contributory negligence is controlled by circumstances of particular case, and court will not decide it as one of law if testimony is conflicting or if conclusion to be drawn therefrom is doubtful."

And, in this same case, which also involved the driving of an automobile into a train standing at a crossing, Associate Justice Stukes (11 S.E.2d at page 278) said:

"In this case the testimony shows that plaintiff knew the crossing, the approximate location of the track, and that he was approaching it, but none of such would charge him, in our view, with foresight of the complete blocking of the crossing by unlighted and unguarded freight cars despite the darkness and rain, and we think and hold that the circumstances herein pointed out require the conclusion that the issues involved in this appeal were properly submitted to the jury."

See, too, the following cases in which plaintiff drove an automobile into a train standing across a highway: Prescott v. Hines, 114 S.C. 262, 103 S.E. 543; and Lawrence v. Southern Railway, 169 S.C. 1, 167 S.E. 839.

The cases relied on by defendant in this connection are readily distinguishable. Thus, in the Funderburk case, supra, the driver of the car was blinded by the lights of another automobile shining in his eyes, yet he drove gaily on. In Cable Piano Co.

v. Southern Railway, 94 S.C. 143, 77 S.E. 868, the driver of the wagon admitted that, though there was an unimpeded view and no weather hazard, he neither looked nor listened before driving onto the crossing. In Chisolm v. Seaboard Air Line Railway, 121 S.C. 394, 114 S.E. 500, a deaf man, at a station in broad daylight, walked in front of an oncoming train which he could plainly have seen by looking to his left. In Drawdy v. Atlantic Coast Line Railroad Co., 78 S.C. 374, 58 S.E. 980, deceased, for the apparent purpose of joining his wife, dashed across the track, after hearing the train whistle blow, in front of the oncoming train. And, finally, in Robison v. Atlantic Coast Line Railroad Co., 179 S.C. 493, 184 S.E. 96, at page 101, we read:

"According to the testimony of the witness Scott, which is not contradicted, when the deceased and Gregg passed him, Gregg, who was operating the bicycle, rose up on the pedals and increased his speed, at a time when the train was approaching the crossing, and either the deceased or Gregg made the statement, 'We can make it; let's go.'"

We find no warrant in these cases for holding the instant plaintiff guilty of contributory negligence as a matter of law.

The judgment of the District Court is accordingly affirmed.

Affirmed.