0529

FMI, INC., Respondent, v. RMAX, INC., Appellant.

(333 S. E. (2d) 360)

Court of Appeals

*Larry D. Estridge*, of *Wyche, Burgess, Freeman & Parham, P.A.*, Greenville, *for appellant.*

*T. S. Stern, Jr.*, of *Haynsworth, Perry, Bryant, Marion & Johnstone*, of Greenville and *Philip T. Lacy*, Columbia, *for respondent.*

Heard May 10, 1985.

Decided July 26, 1985.

GARDNER, Judge:

This case involves a type action novel to this State but addressed by our Commercial Codes. It is a contract action under § 36-2-709, Code of Laws of South Carolina (1976). The jury returned a verdict for the plaintiff, FMI, Inc., (the seller). We affirm.

In pertinent part § 36-2-709 is as follows:

§ 36-2-709. Action for the price.
(1) When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under the next section (§ 36-2-710), the price

\* \* \* \* \* \*

(b) of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing.

The situation before us involves a case in which the goods were identified to the contract and the question of whether the circumstances reasonably indicated that an effort to re-sell the goods would be unavailing.

The facts as adduced by the seller at the trial are briefly reviewed. Mr. Burton, president of the seller, testified that in August 1981 he met with the principals of RMAX, Inc., (the buyer). As a result of this meeting, notebook-size samples of a product wanted by the buyer were delivered to the buyer by the seller. The buyer desired to find a less expensive supplier

of glass felt used as a backing for building insulation board which the buyer manufactured. The price quoted by the seller was three cents per square yard, assuming the delivery of one million square feet per month. Thereafter, the buyer requested additional samples for further testing. The seller modified its machinery to produce the material which the buyer indicated it wanted to buy. After these modifications, the seller produced five sample rolls, four with asphalt and one with fiberglass and no asphalt. These samples differed greatly from the seller's normal roofing products. The five sample rolls were delivered to the buyer's plant. Some two or three weeks later, Mr. Van Zandt, an employee of the buyer, told the president of the seller that the product was great and said, "send me a truck load." There is also evidence of record that the buyer would need one million square feet per month, and that this amounted to a tractor trailer load if the material was stacked from the floor to the ceiling.

The buyer, according to the seller's testimony, indicated that the stock level of the material they had on hand and needed was very low and urged the seller to deliver as quickly as possible. The seller then began to manufacture the material found to be satisfactory when tested by the buyer. A partial shipment of the material was delivered to and accepted by the buyer and the seller manufactured the remaining part of one million square feet. The order for the partial delivery was acknowledged by the buyer and given a purchase order. The seller then invoiced the buyer; the invoice reflected that the balance of the order was 692,116 square feet, which together with that part of the goods previously delivered amounted to one million square feet. There is evidence of record that the buyer ordered one million square feet.

Shortly thereafter the seller attempted to deliver the balance of the order but the seller's truck driver was told by an employee of the buyer that there was no room in the buyer's warehouse to store it. Again the truck was dispatched by the seller to the buyer; at this time the buyer had not indicated there was any problem with the goods which had been shipped; in fact no documentation about the delivery of the goods of any kind was ever received by the seller from the buyer about the delivery of the goods.

Thereafter, the seller attempted to redeliver the goods and then submitted its invoice to the buyer for the balance of the purchase price of the goods the seller had manufactured. The buyer then by telephone advised the seller that there were problems with the material; after this, the seller stored the materials in one of its associate's warehouses in Moonville, South Carolina. At this point, it is well to mention, that there is evidence of record that the goods which were specially manufactured for the buyer were of odd size and were such that the seller had no other customer to sell them to; indeed, the evidence indicates the goods were unmarketable to anyone. This evidence was before the jury.

On appeal the buyer first asserts that the seller made no effort to resell the material and did not present any evidence to support its contention that there was no market for the goods. The buyer misunderstands the statute which especially provides that if the circumstances reasonably indicate that an effort to resell the goods will be unavailing, that is all that is necessary. This is a jury issue. *Multi-Line Mfg. Inc. v. Greenwood Mills, Inc.,* 123 Ga. App. 372, 180 S. E. (2d) 917 (1971), *see* 1A U.L.A.—U.C.C. § 2-709 and the annotations thereof. We hold the evidence of record sufficient to have submitted this issue to the jury, which resolved it in favor of the seller. There is no merit to this exception.

The buyer next asserts that the seller failed to prove that the goods were still in its control as required by § 36-2-709(2). This section provides that where the seller sues for the price, he must hold for the buyer any goods which have been identified to the contract and are still in the seller's control. We hold that there is evidence of record from which the jury could infer that the seller met the necessary showing under this statute. There is evidence that the seller stored the goods in a warehouse of one of its associates. While it is true that there is also evidence that the warehouse was sold as a result of a bankruptcy proceeding, there is no evidence that the goods have been removed from the warehouse. In any event this issue was clearly put to the jury by the charge of the trial judge and the jury resolved it against the buyer. We find no merit in this exception.

Next, the buyer asserts error in the trial judge's refusal to charge revocation of acceptance as set forth in § 36-2-608,

Code of Laws of South Carolina (1976); this section provides that a buyer may revoke acceptance of goods under certain circumstances.

In the instant case, the buyer's answer denied acceptance, let alone revocation of acceptance. Stated differently, revocation of acceptance was not pled. We hold this defense to be an affirmative defense that obviously comes under the rule set forth in *O'Neal v. Carolina Farm Supply of Johnson, Inc.*, 279 S. C. 490, 309 S. E. (2d) 776 (Ct. App. 1983), wherein this court defined an affirmative defense as follows:

> An affirmative defense conditionally admits the allegations of the complaint, but asserts new matter to bar the action. *Lawrence v. Southern Railway-Carolina Division*, 169 S. C. 1, 167 S. E. 839 (1933). In other words, it assumes all elements of the plaintiff's case have been established. Because the plaintiff is taken to have proved a good cause of action, the burden of proof shifts to the defendant to show he is not liable. On the other hand, where the defendant pleads special matter that denies an element of the plaintiff's cause of action, the defense is not affirmative and the burden of proof remains on the plaintiff to establish his case.

For the foregoing reasons, the judgment below is affirmed.

Affirmed.

SANDERS, C. J., and GOOLSBY, J., concur.