566 So.2d 853 (1990)
ROYAL JONES & ASSOCIATES, INC., a Florida Corporation, Appellant,
v.
FIRST THERMAL SYSTEMS, INC., a Tennessee Corporation, Appellee.
No. 90-69.
District Court of Appeal of Florida, First District.
August 30, 1990.
*854 Anderson E. Hatfield, Gainesville, for appellant.
Lisa C. Cohen of Law Office of Lansing J. Roy, Keystone Heights, for appellee.
ZEHMER, Judge.
Royal Jones & Associates, Inc., appeals from a final judgment of the lower court finding that it breached a contract with First Thermal Systems, Inc., and awarding damages to First Thermal Systems, Inc., in the amount of the contract price pursuant to section 672.709, Florida Statutes (1987).[1] Because the goods under the contract were specially manufactured for Royal Jones, were not suitable for sale to others in the ordinary course of First Thermal's business, and it appeared that any efforts on behalf of First Thermal to resell the goods would have been unavailing, we affirm.
On October 4, 1988, Royal Jones ordered three steel rendering tanks from First Thermal for use in its business of constructing rendering plants. Under the terms of the contract, First Thermal would manufacture the tanks according to Royal Jones's specifications for a price of $64,350. Royal Jones was to receive the tanks at First Thermal's place of manufacture in Chattanooga, Tennessee. Royal Jones failed to appear at First Thermal's plant to take delivery of the tanks, refused to accept shipment of the tanks, and refused to pay the contract price. As of the date of the trial, the tanks were still being held for Royal Jones at First Thermal's plant.
The lower court found that Royal Jones had breached the contract, and that the only testimony before it was that the goods were specially manufactured for Royal Jones and were not suitable for sale in the ordinary course of First Thermal's business. Concluding that mitigation of damages was not a viable defense, the court entered judgment for First Thermal, pursuant to section 672.709, awarding First Thermal the contract price of $64,350, interest to the date of trial in the amount of $8,630.56, and attorney's fees and costs in the amount of $3,528.07.
Section 672.709(1)(b) provides that when the buyer fails to pay the price for goods as it becomes due, the seller may recover, together with incidental damages, the price "[o]f goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing." Royal Jones contends that the lower court erred in awarding First Thermal the full contract price as damages for the tanks pursuant to section 672.709, because there was no evidence presented at trial that either First Thermal was unable to resell the tanks after making a reasonable effort to do so, or that the circumstances reasonably indicated that such effort would be unavailing. In reply, First Thermal contends that there was uncontroverted testimony at trial that the tanks were specially manufactured for *855 Royal Jones and that any efforts at resale would have been unavailing.
While there are no Florida appellate decisions interpreting section 672.709 that would be applicable to these circumstances, cases from other jurisdictions support the lower court's decision to award First Thermal the full contract price. Thus, in FMI, Inc. v. RMAX, Inc., 286 S.C. 343, 333 S.E.2d 360 (1985), the court held that where there was evidence that the seller specially manufactured goods for the buyer, the buyer failed to pay for those goods, and the seller had no other customer to which to sell the goods, such evidence was sufficient to warrant submitting to the jury the issue of whether any effort to resell the goods would be unavailing. 333 S.E.2d at 362. The court also noted that circumstances reasonably indicating that any effort to resell the goods would be unavailing is all that is necessary to recover under section 2-709 of the U.C.C. Id. In another similar case, Tracor, Inc. v. Austin Supply & Drywall Co., Inc., 484 S.W.2d 446, 447-449 (Tex.Civ.App. 1972), the buyer specified that it needed "one inch" sheetrock that had to be cut to an irregular size, which made the sheetrock unmarketable. On the delivery date, the buyer rejected delivery by the seller, who subsequently placed the sheetrock in storage. The court held that there was a sufficient showing that the seller, who sought to recover the price, discharged his responsibility under section 2-709 of the U.C.C.
Applying the constructions given to section 2-709 in those cases, we hold that the trial court did not err in awarding First Thermal the full contract price as damages, because the evidence presented at trial by First Thermal was sufficient to meet its burden of proving that the circumstances reasonably indicated that any effort to resell the tanks would have been unavailing. There was testimony at trial that First Thermal specially manufactured the tanks for Royal Jones according to drawings supplied by Royal Jones and that First Thermal had not taken any steps to resell the tanks because it did not know how to market or resell rendering tanks. First Thermal proved that any effort at resale would have been unavailing because these were the only rendering tanks First Thermal ever made, the tanks were manufactured according to Royal Jones's specifications, First Thermal had no other customers to which it could resell the tanks, and it was unaware how the tanks could have been marketed for resale. Also, the tanks were built without needed internal components and to a special size in accordance with Royal Jones's specifications and could not be used as rendering tanks without special engineering to which First Thermal had no access. Finally, there was testimony that the tanks had only scrap value to First Thermal of about $700 if they were processed for a scrap dealer. This evidence was sufficient to shift the burden to Royal Jones to show that any effort at resale would not have been unavailing, or that the tanks had some potential market value beyond the salvage value claimed by First Thermal. See FMI, Inc.; Tracor, Inc. However, Royal Jones presented no evidence to the contrary at trial, and the lower court did not err in awarding First Thermal the full contract price pursuant to section 672.709.
Royal Jones next contends that allowing First Thermal to recover the contract price, while allowing it to keep the rendering tanks, amounts to an impermissible double recovery on the part of First Thermal, citing Page Avjet v. Cosgrove Aircraft Svc., 546 So.2d 16 (Fla. 3d DCA 1989). In Page Avjet, the Third District Court of Appeal held that the trial court erred in permitting the seller to recover the purchase price of a turbine and to retain the turbine that the buyer had returned to the seller without considering the buyer's defenses of set-off and return of the turbine. 546 So.2d at 17-18. The court stated that "to permit [the seller] to retain both the turbine and the purchase price would constitute an impermissible double recovery." 546 So.2d at 17-18.
First Thermal contends that section 672.709(2) permits it to hold the tanks prior to collecting on the judgment. Section 672.709(2) provides that:

*856 [w]here the seller sues for the price he must hold for the buyer any goods which have been identified to the contract and are still in his control except that if resale becomes possible he may resell them at any time prior to collection of the judgment. The net proceeds of any such resale must be credited to the buyer and payment of the judgment entitles him to any goods not resold.
Section 672.709(2) permits First Thermal to hold the tanks for Royal Jones's credit prior to collection of the judgment and requires First Thermal to credit Royal Jones with the net proceeds of any resale of the tanks made prior to collection on the judgment or to turn over any tanks not resold upon Royal Jones's payment of the judgment. First Thermal has reaffirmed its willingness to turn the tanks over to Royal Jones upon payment. Consequently, there is no impermissible double recovery. The Page Avjet decision is not applicable to these circumstances.
Finding no error in the trial court's ruling, the judgment is AFFIRMED.
BOOTH and SMITH, JJ., concur.
NOTES
[1] Section 672.709 is the same as section 2-709 of the Uniform Commercial Code (UCC).