15015

CARTER v. ATLANTIC COAST LINE R. CO. *ET AL.*

(7 S. E. (2d), 163)

442

May, 1939.

*Messrs. J. W. Manuel* and *Hagood, Rivers & Young,* for appellants,

*Messrs. Murdaugh & Murdaugh,* for respondent,

February 12, 1940.

The opinion of the Court was delivered by MR. L. D. LIDE, ACTING ASSOCIATE JUSTICE.

Mrs. Bessie Lee Carter, the respondent herein, brought this action against the appellants, Atlantic Coast Line Railroad Company and its engineer, W. B. Newsome, to recover damages for personal injuries alleged to have been sustained by her by reason of a crossing collision which occurred on September 13, 1938, in the town of Ehrhardt. The railroad company maintains a spur track from its main line extending around a curve to a manufacturing plant in the outskirts of Ehrhardt, but within its corporate limits, the same being referred to in the record as "Mrs. Morningstar's Ice Plant and Heading Mill," a mill which makes barrel heads. The spur track crosses, at or near the plant, a dirt road or street

maintained by the town. On the right side of the road going in a westerly direction there was a growth of weeds, referred to by some of the witnesses as fennels or dog fennels, quite thick and tall, being eight to ten feet high, and extending down to within six feet of the railroad track, according to some of the evidence.

Mrs. Carter was at the time of the collision a guest passenger in an automobile which was being driven by Randal Carter, her distant cousin, a youth seventeen years of age. Riding with Randal on the front seat was his sister, Miss Evelyn Carter. Mrs. Carter, the respondent, was seated in the back seat on the right-hand side. They had come to Ehrhardt in the automobile from Ashton, which was near their homes. Randal and his sister were going to Ehrhardt and took Mrs. Carter with them at her request. When they reached the town they stopped and did some shopping there and later returned to the automobile, their purpose being to go to the ice plant and purchase some ice. When they neared the crossing, which was between them and the ice plant, the driver, so he testified, slowed down almost to a stop and looked in both directions, but did not see any train, because, as he said, the weeds to his right obstructed his view. It should also be stated that there was a building to his right located near the railroad track. He further testified that he did not hear the whistle blow or the bell ring. It is not denied that he was driving his automobile at a low rate of speed, perhaps from five to ten miles per hour. When he got on the track itself, according to his statement, he first discovered that a train was backing toward the crossing, and just before he cleared the crossing the box car at the end of the train struck the automobile on the rear right-hand side and threw Mrs. Carter up against the front seat, as a result of which she sustained some physical injuries, but the automobile was not overturned. The train, which was being backed around a curve, consisted of an engine and two or three box cars, and it is admitted that it was running very

slowly. The testimony of the driver was corroborated by Mrs. Carter and Miss Evelyn Carter, the other two occupants of the motor vehicle. Mrs. Carter testified that she looked and did not see the train. Indeed, they both testified that they looked but did not see the train, and that they did not hear the bell ringing or the whistle blowing. The employees of the railroad company testified that the bell was ringing but it is not claimed that the whistle was blowing. There was also testimony by one witness for the appellants who saw the collision that the bell did not ring nor did the whistle blow, and that he was in a position to have heard them if the signals had been given.

The plaintiff and the other occupants of the automobile testified that there was no flagman on the rear of the train, but C. A. Sanders, brakeman or flagman, testified positively that he was on the rear of the train, and that when he saw the automobile about to enter on the crossing he did all that he could to prevent the collision, that he jumped off to signal the engineer, and that he whistled and called to the occupants of the automobile, but was unable to make them hear. The conflict in the testimony as to this is not so sharp as appears from a casual reading, because at the time of the actual collision the brakeman was not on the rear of the train, according to his own statement, having jumped off in the attempt, as he says, to prevent the collision.

The case came on to be tried at the spring term, 1939, of the Court of Common Pleas for Hampton County, before Hon. M. M. Mann, presiding Judge, and a jury, and in the course of the trial motions were made for nonsuit and direction of verdict, which were refused by the Court, and the case was submitted to the jury, resulting in a verdict of $2,000.00 actual damages for the plaintiff.

The appeal to this Court is based upon three exceptions, raising two questions only: (1) Should a verdict have been directed for the defendants? and (2) Was the verdict so

excessive as to show passion and caprice on the part of the jury?

The foregoing brief statement of some of the outstanding facts disclosed by the testimony indicates that this is another one of that large number of grade-crossing cases arising under the signal statutes now embodied in Sections 8355 and 8377, Code, 1932. These sections are perspicuous in their language and have been construed time and again. Indeed, this Court has laid down in clear and unmistakable terms the governing principles, so that the law is perhaps sufficiently understood, yet each case presents a problem arising out of the varying factual situations. And no definite rule can be laid down for the solution of such a problem. *Robison v. Atlantic Coast Line R. Co. et al.*, 179 S. C., 493, 184 S. E., 96.

But we shall briefly refer to some of the language contained in the crossing statute, and a few of the major decisions. Section 8377 provides that if a person is injured in his person or property by a crossing collision, and it appears that the signals were not given, and that such neglect contributed to the injury, the railroad corporation shall be liable for damages caused by the collision, "unless it is shown that in addition to a mere want of ordinary care the person injured, or the person having charge of his person or property, was at the time of the collision guilty of gross or wilful negligence, or was acting in violation of the law, and that such gross wilful negligence or unlawful act contributed to the injury". We are, therefore, in full agreement with the appellants in the view taken by them that the right of plaintiff to recover would be defeated by the contributory gross negligence, either of herself or of the driver of the automobile, who had charge of her person. In the light of the words quoted from the statute it is unnecessary to consider whether or not the driver of the automobile and Mrs. Carter were engaged in a joint enterprise. This construction is sustained by the decision of the Court

in *Neely, Adm'r, v. Carolina & N. W. Ry. Co.*, 123 S. C., 449, 117 S. E., 55, which merely gives effect to the plain language of the statute.

One of the most important crossing cases in our reports is that of *Ford v. Atlantic Coast Line R. Co. et al.,* 169 S. C., 41, 168 S. E., 143, heard by the Court *en banc,* which was appealed to the United States Supreme Court and affirmed by that Court. *Atlantic Coast Line R. Co. v. Ford,* 287 U. S., 502, 53 S. Ct., 249, 77 L. Ed., 457. This case is also significant because it was tried on Circuit by Hon. M. L. Bonham, then Circuit Judge, but now Chief Justice of this Court, and the judgment of the Circuit Court was affirmed. The opinion of the Court *en banc* among other things, sustains Judge Bonham's accurate definition of gross negligence. The Court says (169 S. C., 41, 168 S. E., 157) :

"The second question imputes error in the definition of 'gross negligence' given the jury by the presiding judge who instructed them on this question as follows: 'Now "gross negligence" is the failure to exercise slight care; the failure to exercise slight care. As distinguished from ordinary negligence, simple negligence, it is the intentional, conscious failure to do a thing that is encumbent upon one to do, or the doing of a thing intentionally that one ought not to do.'

"This instruction, relating to a definition of the words 'gross negligence' as used in the statute and characterized by the context, was in complete harmony with the many pertinent decisions in this state *(Boyd v. Blue Ridge Railway Company,* 65 S. C., 326, 43 S. E., 817; *Glenn v. Southern Railway Company,* 145 S. C., 41, 142 S. E., 801) wherein it has been repeatedly held that such words indicate negligence so gross and reckless as to amount to willfulness."

There is an earlier and much-cited case, to wit, *Chisolm v. Seaboard Air Line Ry.,* 121 S. C., 394, 114 S. E., 500, 503, in which the opinion was delivered by that able jurist, Mr. Justice Marion, wherein he so well states the reciprocal

duties of travelers and railroad companies at crossings that it has become a veritable classic. One of the frequently quoted statements in this opinion is the following: "On reaching a railroad crossing and before attempting to go upon the track, a traveler must use his senses of sight and hearing to the best of his ability under the existing and surrounding circumstances; he must look and listen in both directions for approaching trains, if not prevented from so doing by the fault of the railroad company, and to the extent the matter is under his control *must look and listen at a place and in a manner that will make the use of his senses effective.*" (Italics added.)

While this case is perhaps more often cited as supporting the contentions of the railroad company, it should be remembered that the Court sustained the judgment of the lower Court in declining to direct a verdict, holding that it was a question for the jury and not for the Court to determine whether the intestate in that case exercised the care of a man of ordinary prudence "in going upon the track without looking in the direction of the train that struck him", and that even if his conduct would be held to amount to contributory negligence, the Court could not say as a matter of law that it amounted to gross contributory negligence or willfulness.

The case, however, which is cited and mainly relied on here by the appellants is the case of *Robison v. Atlantic Coast Line R. Co., et al, supra,* in which the opinion was written by Mr. Justice Fishburne, wherein with unerring skill he states the applicable principles of law, based upon previous decisions, in language too plain to be misunderstood. And this case has been consistently followed. See especially *Hicks v. Atlantic Coast Line R. Co. et al.,* 187 S. C., 301, 197 S. E., 819; *Wannamaker v. Southern Ry. Co.,* 191 S. C., 86, 3 S. E. (2d), 811; and *Howell v. Southern Ry. Co.,* 192 S. C., 152, 5 S. E. (2d), 860, filed December 4, 1939.

The question thus presented for our determination is: Was the testimony here subject to a reasonable inference on the part of the jury that neither the plaintiff herself nor the driver of the automobile was guilty of gross contributory negligence? In considering this question we must of course apply to the evidence the familiar formula that it be considered most favorably to the plaintiff.

We may observe at the outset that the evidence clearly made an issue for the jury as to whether or not the statutory signals were given. As above stated, the occupants of the automobile positively testified that they did not hear either the bell ringing or the whistle blowing, and one of the witnesses for the appellants also testified to the same effect. Hence the jury were justified in concluding that neither of the statutory signals was given, although there was evidence to the contrary on the part of the employees of the railroad company. And the jury were also justified in concluding from the evidence that the failure to give these signals or one of them, was the proximate cause of the collision, or at least a contributing proximate cause thereof.

We may also note as a part of the surrounding circumstances that the train was being *backed around a curve*. This use of the spur track was of course not unlawful but actually necessary for the purposes for which it was maintained in connection with the heading mill. At the same time the jury might consider its effect upon the visibility of the train and the ability of travelers on the road or street to hear the train coming, especially in view of the fact that the engine was necessarily at some distance from the crossing.

The specific charge made against the plaintiff herself under the exceptions is that she was grossly negligent in not looking to see whether the train was approaching, but she testified directly on cross examination that she did look, although not expecting the train; and, further, she said: "I looked, but I did not see the train."

The specific charge made against the driver of the automobile is that he was grossly negligent in driving upon a railroad crossing without looking, in a place where he could see, to see whether or not a train was approaching.

The testimony of the driver is quite clear and definite that he did look, but the point in the case as to whether he looked at the right place is what makes the instant case a border-line case. It is frankly admitted that the occupants of the automobile, including the driver and the plaintiff, were all more or less familiar with the crossing, but they did not live in Ehrhardt and the actual extent of their acquaintance with the crossing is not disclosed by the evidence. For instance, it does not appear whether they had on previous occasions observed the effect of the weeds and other obstructions on the visibility of a train. Indeed, it does not appear that they had ever gone over the crossing before when a train was on the spur track.

In the *Robison case* the Court calls attention to the fact that the existence of an obstruction, especially where it is known to the driver, imposes additional care and caution upon him in approaching the track, and also that the degree of care on the part of the railroad company "may be affected by obstructions which prevent the track from being seen as a train approaches". (179 S. C., 493, 184 S. E., 101.) Quite obviously if one looks at a point where he *knows* that the obstructions will prevent him from seeing the train his looking does not conform to due care or even slight care, for of course it would be futile to look where you know beforehand you cannot see. However, we do not think such gross negligence is a necessary conclusion from the testimony in this case; for while it might be inferred from isolated portions of the evidence yet when the testimony is considered as a whole it will appear that knowledge as to the effect of the obstructions was that acquired from the particular incident itself and not that acquired prior thereto, or at least that the jury were reasonably justified in so finding. Certainly when the conduct of

the driver is considered in view of all the existing circumstances it would be going rather far to charge him with anything approaching recklessness. Construing the testimony most favorably it may be inferred that his car was well under control, being driven slowly and cautiously. Clearly the evidence would hardly admit of the inference that he knew the train was coming and took the chance of beating it across, because if that had been the case he would have speeded up the car. In this connection, the evidence that Miss Evelyn told the driver to "step on it" is not significant, because manifestly this statement was made after the automobile was actually on the track and was about to be struck by the box car.

It is admitted that the occupants of the car had seen the train at the station some distance away before they reached the crossing of the spur track, but there is no significance in this for at that time the train was standing still. It also appears that the railroad was for some distance approximately parallel with the street they traveled on their way to the crossing, and distant from the street 150 to 200 yards, and that perhaps they could have seen the train on the spur track some time before they reached the crossing, but if they failed to look before they came into the proximity of the crossing this in itself could scarcely be held negligence or gross negligence as a matter of law.

The following quotation from 52 C. J., 496, 497, meets with our approval: "It is ordinarily a question for the jury whether under the particular circumstances one who was injured at a railroad crossing at which his view or hearing was obstructed exercised due care in looking and listening, or in stopping, looking and listening, for approaching trains, cars or engines at a proper time and place and in the right direction. It is also usually a question for the jury whether having looked and listened, or stopped, looked and listened, at one point, he is guilty of contributory negligence in failing to do so at another place." And we add that in our judgment it was a question for the jury in

the instant case to determine whether or not the plaintiff or the driver of the automobile was negligent in not looking for the train where the visibility was better; but we may observe in this connection that one of the witnesses testified that by way of experiment he stopped his own automobile about ten feet from the crossing and that he could not see more than ten or twenty feet down the track in the direction from which the train was coming on the occasion in question here.

We reaffirm the teachings of the *Robison case, supra,* without qualification; but the facts of that case may be readily distinguished from those in the instant case, for there the two boys on the bicycle knew the scheduled arrival of the train, and when they actually saw it they took the chance of beating the train over the crossing; a clear case where a verdict should have been directed for the railroad company.

The Court truly cannot lay down with much precision any rule as to what will constitute due care under all circumstances. A most excellent illustration of this is the well-known case of *Baltimore & Ohio R. R. Co. v. Goodman,* 275 U. S., 66, 48 S. Ct., 24, 25, 72 L. Ed., 167, 56 A. L. R., 645, in which the opinion was delivered by that illustrious Judge, Mr. Justice Holmes, holding that one attempting to drive an automobile over a railroad crossing with which he is familiar is negligent so as to prevent recovery for his death by being struck by a train, where, when his view of the track is obstructed, he does not stop and look, and if necessary leave the vehicle to make sure the crossing is safe. The Court said that the question of due care was very generally left with the jury, but quoting from the opinion they also said: "But we are dealing with a standard of conduct, and when the standard is clear it should be laid down once for all by the Courts." Yet our own Court, viewing a like situation in a less abstract and theoretical way, declined to follow the *Goodman case,* which of course was not binding authority but only persuasive, but concurred with a Georgia

case to the effect that as a practical matter to require a driver to leave his automobile for the purpose of looking for a train might actually result in increasing the danger. *Key v. Carolina & N. W. Ry. Co.,* 150 S. C., 29, 147 S. E., 625. It is most interesting to observe that the Supreme Court of the United States subsequently overruled or rather limited the *Goodman case,* coming to the identical conclusion that our own Court had previously expressed.

For in the case of *Pokora v. Wabash Ry. Co.,* 292 U. S., 98, 54 S. Ct., 580, 582, 78 L. Ed., 1149, the Court, speaking through Mr. Justice Cardozo, holds that one whose view of a railroad track before entering upon a crossing is obstructed cannot be said as a matter of law to have been guilty of contributory negligence in not getting out of his vehicle to reconnoiter before driving on the crossing. As the Court says: "Standards of prudent conduct are declared at times by courts, but they are taken over from the facts of life. To get out of a vehicle and reconnoiter is an uncommon precaution, as everyday experience informs us. Besides being uncommon, it is very likely to be futile, and sometimes even dangerous. If the driver leaves his vehicle when he nears a cut or curve, he will learn nothing by getting out about the perils that lurk beyond. By the time he regains his seat and sets his car in motion, the hidden train may be upon him."

It is indeed the duty of a traveler on a street or highway to exercise his senses of sight and hearing at a place where they may be effective, to the extent that the matter is under his control, and in the light of his knowledge of the surrounding conditions, but the mere fact that his choice of a viewpoint proves to be erroneous does not necessarily convict him even of negligence, much less of gross negligence. The issue thus presented in the case at bar was clearly one for the jury. Some allusion is made to the fact that the obstructions were not on the railroad property, although it had been the custom of the railroad company to burn off every year the weeds, etc., adjacent to the track. But while this circumstance was one to be considered by

the jury the fact remains that the alleged obstruction formed a part of the physical environment and thus constituted a factor in the consideration of the question of due care and slight care. We conclude that Judge Mann rightly declined to direct a verdict.

The other question presented by this appeal is that the verdict was so excessive as to show passion and caprice on the part of the jury. But we·are definitely precluded from considering this question because it was not presented to the trial Judge by a motion for a new trial; this being peculiarly a matter within his discretion. *Anderson v. Ætna Casualty & Surety Co.*, 175 S. C., 254, 280, 178 S. E., 819; *Worrell v. South Carolina Power Co.*, 186 S. C., 306, 195 S. E., 638. But we may make the observation that while the verdict was quite large it is not *prima facie* so excessive as to shock the conscience of the Court.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BONHAM and MESSRS. JUSTICES CARTER, BAKER and FISHBURNE concur.