238 S.C. 27 (1961)
118 S.E.2d 880
Wayne JONES, Respondent,
v.
SOUTHERN RAILWAY COMPANY, Appellant.
17756
Supreme Court of South Carolina.
March 15, 1961.
*28 Messrs. Frank G. Tompkins, Jr., John Gregg McMaster, and Robert J. Thomas, of Columbia, and William R. Gettys, of Camden, for Appellant.
*29 Messrs. John C. West, Frank E. Rector, and Harold W. Funderburk, of Camden, and John A. Martin, of Winnsboro, for Respondent.
*30 Messrs. Frank G. Tompkins, Jr., John Gregg McMaster and Robert J. Thomas, of Columbia, and William R. Gettys, of Camden, for Appellant, in Reply.
*31 March 15, 1961.
LEGGE, Justice.
Shortly after midnight on October 18, 1957, a tractor-trailer being driven by the plaintiff southward on U.S. Highway No. 521, in a dense fog, struck a moving freight train of the defendant at a crossing some three miles south of Camden, S.C. He brought this action for damages for personal injuries sustained in the collision, which he alleged had resulted from negligence and willfulness on the defendant's part in failing to give proper warning of the presence of the train across the highway. By its answer the defendant denied fault on its part and pleaded contributory negligence.
The trial judge overruled defendant's motions for nonsuit and directed verdict, but granted its motion to strike all reference to willfullness and punitive damages. The jury found for the plaintiff $35,000.00, actual damages. Thereafter, defendant's motion for judgment n. o. v. was denied, but a new trial was ordered unless the plaintiff should remit $10,000.00 of the verdict; and this the plaintiff did.
Defendant's appeal primarily charges error in the refusal of its motions for nonsuit and directed verdict, in that: (1) there was no evidence of actionable negligence on its part; and (2) if there was such evidence, nevertheless the only reasonable inference from all of the evidence is that the collision was proximately caused by the plaintiff's contributory negligence.
U.S. Highway 521 runs approximately south from Camden to Sumter. Its asphalt roadway is 25 feet wide, and on either side is a 10 foot dirt shoulder. It is straight for a distance of approximately 1,000 feet northward of the railroad crossing. Defendant's track, running approximately northeast from Columbia to Camden, intersects *32 the highway diagonally at the crossing in question. On either side of the track, at the crossing, were railroad cross-arm signs, "reflectorized", on the dirt shoulder of the highway to the right of approaching traffic. Four hundred six feet north of the crossing, to the right of southbound highway traffic, was the usual highway department railroad warning sign.
Defendant's train, en route from Columbia to Camden, consisted of an engine, followed by two loaded coal cars, thirty empty "wood-racks", and a caboose. A "wood-rack" is a flat car about 45 feet long with upright solid ends about 7 feet high; it is used for transportation of pulpwood. Testimony for the defendant was to the effect that on the night in question there was a "spotty" fog over the track; that upon reaching the whistle-post some 1,500 feet southwest of the crossing the statutory signals of bell and whistle were given; that these signals continued until the engine had crossed the highway; and that the speed of the train, which at the whistle-post was 30 miles per hour, was reduced to 25 miles per hour as the crossing was approached, and was accelerated as soon as the engine had passed over the crossing. Plaintiff's tractor-trailer struck the twenty-sixth car and broke its coupling, separating the last seven cars from the rest of the train. The break in the train's air line caused the brakes to be applied automatically on the engine and all cars, including the seven that had been separated; and the train came to a stop with the caboose about 50 feet beyond the crossing, and a space of about three car-lengths between the two portions of the train.
The plaintiff was the only eye-witness to the collision. We summarize his testimony as follows:
At the time of the trial, in February, 1960, he was thirty-seven years old and had been in the employ of Foremost Dairies, of Charlotte, N.C., for a little over five years. On the night of the accident he left Charlotte between 9:00 and 9:30 p. m., hauling a 32 foot refrigerated van-type trailer *33 containing milk for delivery at Sumter and Conway, S.C. His route was via Camden, thence south on Highway 521 to Sumter, thence to Conway. It was his regular route; he had traveled it five nights a week for more than a year; he was familiar with the location of the crossing in question; but he had never seen a train on it. To quote from his direct examination:
"Q. Now on this particular night, what were the conditions concerning the weather? A. It was awful foggy.
"Q. When you say `awful foggy', tell us what you mean. Describe it as best you can, as to how much fog was present. A. Well, when I left Charlotte it wasn't as foggy as it was on down this way. The further I came this way the foggier it got, and when I came through Camden, well, it was getting awful foggy. You just mighty near had to follow the white line to see anything."
He testified that the fog lights on the truck were on, and that his other lights were on dim, as one can see the road better in a fog when the lights are dim; that in the condition of the weather that night he could see "about fifty feet." To quote further from his direct examination:
"Q. Now did you know, prior to your approaching this crossing, or did you realize or know that you were approaching a crossing? A. No, sir.
"Q. Why is that, sir? A. Well, it was so foggy that you couldn't tell where you were at.
"Q. Well, what were you looking at, sir, while you were driving? A. I was following the white line, sir.
"Q. Did you see any railroad sign at all, sir? A. No, sir.
"Q. What speed were you traveling? A. between thirty and forty miles an hour.

* * *
"Q. What was the first thing that you saw that indicated that this crossing was not clear, sir? A. My lights shined on the reflection of the wheels going across.
*34 "Q. Do you have any idea how fast this train was traveling, or how slow it was traveling, or at what rate of speed it was traveling? A. No, sir, I don't.
"Q. Which way was the train traveling? A. It was going toward Camden.
"Q. And approximately how far were you from this train when you first saw it? A. When I first saw it, I was about fifty feet.

* * *
"Q. Now, what did you do immediately when you first saw your lights reflecting on the wheels when you were some fifty feet from the train? A. Well, I slammed on the brakes as hard as I could, and cut to the right.
"Q. Then what happened, sir? A. Well, from then on, for a little bit, I don't know, until that milk started pouring down my back.
"Q. Did you hear a collision? Do you recall hearing a collision? A. Yes, sir, I could hear it when I first hit.

* * *
"Q. Now, Mr. Jones, at the time you approached this crossing here that you had this collision at, what, if anything, did you hear? A. I didn't hear anything.
"Q. Could you hear the train itself? A. No, sir.
"Q. What did you see, in reference to any lights, or warnings, or signs, as you approached this crossing? A. I didn't see anything.
"Q. Were you looking where you were going, sir? A. Yes, sir, I was following the white line.
"Q. You had your eyes on the white line? A. Yes, sir." And on cross-examination:
"Q. As a matter of fact, you were just lighting your pipe weren't you? A. I was lighting my pipe, yes, sir.
"Q. And you looked up and saw the train? A. I wasn't looking up, I never did take my eyes off of the road.
*35 "Q. You were lighting the pipe? A. I don't know whether I lit it that close to the track, or whether I lit it back down this way, but I know that I had the pipe." And on re-direct:
"Q. Do you recall ever taking your eyes off of the road just before you approached this crossing, sir? A. No, sir."
At the time of the accident no flagman was at the crossing nor was there at or near it any flashing light or warning device other than the railroad cross-arm and the highway warning sign before mentioned. Except for the two loaded coal cars next to the engine (which had already crossed the highway), and the caboose (which had not yet reached it), the train was composed of empty flatcars or woodracks, unlighted and of dark color. We need not decide, as a matter of law, whether in these circumstances and in the unusual condition of the weather at and near the crossing, due care on the part of the defendant required the presence of a flagman, or the use of a fusee, or the use of some additional warning, visible or audible, during the movement of its long train across the highway. Assuming that that issue was properly for the jury and that the evidence warranted their finding of negligence, we cannot escape the conclusion that all of the evidence, and especially the testimony of the plaintiff himself, shows, to the exclusion of any other reasonable inference, that the plaintiff was guilty of contributory negligence.
The trial judge ruled that the crossing statute (Code 1952, Section 58-743) was not applicable, because of the distance that the engine had proceeded beyond the crossing before the collision occurred. That ruling is not challenged, and is the law of the case. It did not preclude argument for the plaintiff that the defendant had negligently failed to ring a bell or blow a whistle at such time as would have given proper warning to highway traffic; but it did eliminate the requirement (Section 58-1004) of proof of gross or wilful contributory negligence to defeat recovery. *36 The issue of willfulness on the part of the defendant having been eliminated, proof of simple contributory negligence was, under the ruling just mentioned, all that was required to defeat plaintiff's recovery. Such contributory negligence is, we think, conclusively established by his own testimony hereinbefore set out.
There have been many cases before this court arising out of collisions between motor vehicles and trains at railroad crossings. Except where they have arisen out of the same accident, in no two of them have the circumstances been so similar that one might be said to be controlling of the other. Essentially, in each case of this kind the issues of negligence and contributory negligence must be decided upon its own factual situation. Careful consideration of the cases in this jurisdiction cited by able counsel for both parties reveals essential distinctions between their circumstances and those of the case at bar. In some the crossing statute was involved, e. g.: Callison v. Charleston & W. C.R. Co., 106 S.C. 123, 90 S.E. 260; Richardson v. Northwestern R. Co. of S.C., 124 S.C. 314, 117 S.E. 510; Ford v. Atlantic Coast Line R. Co., 169 S.C. 41, 168 S.E. 143; Carter v. Atlantic Coast Line R. Co., 192 S.C. 441, 7 S.E. (2d) 163; Allen v. Southern R. Co., 218 S.C. 63, 61 S.E. (2d) 660; and Johnson v. Charleston & W.C. R. Co., 234 S.C. 448, 108 S.E. (2d) 777. In others, a train standing still, was blocking a street in a city or town: Prescott v. Hines, 114 S.C. 262, 103 S.E. 543; Miller v. Atlantic Coast Line R. Co., 140 S.C. 123, 138 S.E. 675, and its companion case, Pinckney v. Atlantic Coast Line R. Co., 147 S.C. 227, 145 S.E. 135; Funderburk v. Powell, 181 S.C. 412, 187 S.E. 742; Kneece v. Southern R. Co., 187 S.C. 195, 197 S.E. 673; or a highway; Myers v. Atlantic Coast Line R. Co., 172 S.C. 236, 173 S.E. 812; Spires v. Atlantic Coast Line R. Co., 174 S.C. 508, 178 S.E. 136; Bingham v. Powell, 195 S.C. 238, 11 S.E. (2d) 275. In another, Bober v. Southern R. Co., 151 S.C. 459, 149 S.E. 257, where the crossing statute appears not to have *37 been involved, the negligence of the driver of the motor vehicle was held not imputable to the plaintiff, a passenger. In others, lights visible through the standing train created a deceptive situation responsibility for which on the part of the railroad was held, under the evidence, to be a jury issue: Lawrence v. Southern Ry., Carolina Division, 169 S.C. 1, 167 S.E. 839; Crapse v. Southern R. Co., 201 S.C. 176, 21 S.E. (2d) 737; Peagler v. Atlantic Coast Line R. Co., 234 S.C. 140, 107 S.E. (2d) 15.
Those factors, important to the issues of negligence and contributory negligence or willfulness in the cases just mentioned, are absent here. Instead, we find an experienced driver, familiar with the highway and with the location of the railroad crossing, aware of an enveloping fog so dense as to limit his visibility to 50 feet, nevertheless, according to his own testimony, looking only at the white center line, and driving at a speed which, as he himself demonstrated, was too high under those conditions. That he may never have seen a train pass at this crossing before may serve to explain why he took a chance that there would be none on this occasion, but it does not absolve him of negligence in so doing.
In our opinion the evidence here is susceptible of no reasonable inference other than that the collision was proximately caused by the plaintiff's contributory negligence; and the defendant's motion for directed verdict should have been granted. Consideration of the other exceptions is unnecessary.
Reversed and remanded for entry of judgment under Rule 27.
TAYLOR, OXNER and MOSS, JJ., concur.