17771

James H. BROWN, Respondent, v. ATLANTIC COAST LINE RAILROAD COMPANY, Appellant

(119 S. E. (2d) 729)

*Messrs. McKay, McKay, Black & Walker,* of Columbia, and *Reynolds & Reynolds,* of Sumter, *for Appellant,*

*Messrs. Nash & Wilson,* of Sumter, *for Respondent,*

*Messrs. McKay, McKay, Black & Walker,* of Columbia, and *Reynolds & Reynolds,* of Sumter, *for the Appellant, in Reply,*

April 28, 1961.

Oxner, Justice.

Between 2:30 and 3:00 A. M. on September 6, 1958, a 1946 Ford automobile driven by James H. Brown collided with a flatcar that was standing on and blocking a railroad crossing on South Harvin Street in the City of Sumter. As a result of the collision, Brown sustained personal injuries and his automobile was damaged beyond repair. He brought this action against the Atlantic Coast Line Railroad Company to recover actual and punitive damages. He alleged that the Railroad Company was negligent and reckless in permitting this flatcar, which he claims was of the same color as the street and which "had a visibility of only eight inches or less", to remain on the crossing for a long period of time without giving any warning to the traveling public of its presence, thereby creating a dangerous and hazardous obstruction of the crossing. The Railroad Company entered a general denial and further alleged that the plaintiff was guilty of contributory negligence and recklessness in driving his automobile at an excessive rate of speed, in failing to keep it under proper control, in failing to keep a proper lookout, in driving while under the influence of intoxicating liquor, and in operating an automobile with insufficient and defective lights.

The trial resulted in a verdict for plaintiff for $802.10 actual damages and $580.00 punitive damages. The only question we need consider on this appeal is whether the Court below erred in refusing defendant's motion for a directed verdict upon the ground that plaintiff was guilty of gross contributory negligence and recklessness as a matter of law.

The freight train with which plaintiff's car collided consisted of about 120 cars, 18 of which were to be put off at Sumter. It had been standing only two or three minutes before the accident occurred. It stopped at a point where the caboose was about 250 feet east of the crossing. The flat-

car was 53 feet long, about three feet in height, and its low beam about 12 inches above the rails.

Plaintiff was driving north on South Harvin Street, which is about 25 feet wide and covered with asphalt. It is intersected at approximately right angles by nine tracks of the Atlantic Coast Line Railroad Company. Plaintiff passed over seven of them and struck the middle of the flatcar standing on the eighth track. The street is practically level at this point but the crossing is "rough". Plaintiff testified that it was a "clear, open crossing". There is a street light located 362 feet south of the point of the collision and another 78 feet north of that point. On either side of the crossing there were railroad cross-arm signs "reflectorized". South Harvin Street is rather heavily traveled but there is no testimony that there was any other automobile using it at the time of the collision.

Plaintiff, a man in his middle thirties, lived near this crossing and was thoroughly familiar with it. On the night in question he was alone in the car. No one else saw the accident. He testified that he was on his way to get some bait to go fishing; that he entered South Harvin Street from Devine Street, which is 594 feet south of the crossing; that he stopped before entering South Harvin Street, then started north in low gear and stayed in low gear until he reached the first track, at which time he shifted to second gear to go across the track; that he was then traveling about 30 miles an hour; and that he was only a few feet from the flatcar before he saw it and had only a moment to apply his brakes. He said that he had on his bright lights but on "low beam".

According to plaintiff, there was nothing on the flatcar at the time of the accident and its dark color blended with that of the street, making it difficult to see. However, the members of the train crew and the investigating officers said that it was loaded with two John Deere combines, painted green with yellow wheels, which rendered it clearly visible for a distance of several hundred feet. There is a further sharp

conflict in the evidence as to the visibility on the night in question. Plaintiff claimed that it was "foggy and kind of smoky". The testimony of all other witnesses was to the contrary.

Plaintiff testified that his car might have skidded three or four inches. Investigating officers found skid marks behind his car which they variously estimated as being between four and eight feet in length.

Plaintiff admitted that on the night of the accident he had had one beer before supper and another after supper but denied that he was under the influence of intoxicants. The physician who attended him about an hour after the accident testified that "he smelled very loud of alcohol". All of the officers said that he had a strong odor of alcohol and had been seen at a "juke joint" about 12:30 that night.

No testimony was offered by plaintiff as to the approximate distance this flatcar could have been seen as one approached the crossing from the south. His only testimony as to visibility was the following given on cross examination:

"Q. All right. Now, Mr. Brown, as you approached that crossing, if there had been no train there and a person had been standing there, at what distance could you have seen that person? A. Well, I couldn't have saw him at all.

"Q. You couldn't have? A. No, sir, not if he blended, unless he had some kind of identification on him, to where you could see him, he would have just been dead, I reckon.

"Q. Now, if I were standing right there on that track where you had this accident, how close would you have had to get to me before you could have seen me, with the lights you had on? (Later testimony disclosed that counsel was then standing about 18 feet from the witness.) A. I could have saw you better than I could the flatcar, standing there.

"Q. What distance? A. Well, I couldn't give you no definite answer.

"Q. This distance? (Indicating.) A. No, sir.

"Q. You couldn't have seen me? A. No, sir, not that morning, because time I went out, with that fog across that track, there was that flatcar."

The testimony offered by defendant was to the effect that on the night in question, this flatcar could have been seen a distance of several hundred feet approaching either from the north or the south. One of the police officers, who arrived shortly after the accident, testified as follows:

"Q. Now as I understand it, you said you approached from the South to this crossing when the wrecker came up? A. Yes, sir, I said I walked South on it, on South Harvin towards the wrecker and turned around and came back.

"Q. Now could you see the flatcar with the combines on it? A. Yes, sir.

"Q. How far were you from it? A. I was on the North side of Avery Lumber Company. I don't know what they use those little buildings just north of it—it was approximately beside those when I got to the wrecker.

· "Q. Would you say that was about half the distance from track number 8 to Devine Street Intersection? A. Not quite half.

"Q. How far would you say it was, about how many feet? A. I would say one hundred, 150 feet.

"Q. Could you see the flatcar and the combines? A. Yes, sir.

"Q. Anything to prevent you from seeing them? A. No, sir."

We cannot escape the conclusion that under plaintiff's own testimony he was guilty of contributory negligence and recklessness. He says he did not see this flatcar until he was within a few feet of it. No reason is given for his failure to see it earlier except his statement that the night was foggy and that the dark color of the flatcar blended with the black asphalt street. If, as he apparently claims, conditions were such that he could not see a dark

object until within a few feet of it, he was grossly negligent in driving at a speed of 30 miles an hour. On the other hand, if, as defendant's testimony shows, the weather was clear and the street lights made this flatcar plainly visible at a distance of 150 or 200 feet, plaintiff was guilty of gross contributory neligence in failing to see the standing train in time to avoid the collision.

In refusing defendant's motion for judgment *non obstante veredicto,* the trial Judge relied principally upon *Peagler v. Atlantic Coast Line Railroad Co.,* 234 S. C. 140, 107 S. E. (2d) 15. There an automobile driven by the plaintiff collided after dark with an empty black pulpwood flatcar which was standing on and blocking a heavily traveled street in North Charleston, South Carolina. There was testimony that the street light had no effect on the crossing, that other motorists approaching the crossing at the same time as the plaintiff were unable to see the flatcar until very close to it, and that the lights of an automobile approaching the crossing from the opposite direction, which were blinking, created an illusion that the crossing was safe and unobstructed. None of these circumstances appear in the instant case.

Also cited in the order of the Court below was *Bingham v. Powell,* 195 S. C. 238, 11 S. E. (2d) 275, 276. There the automobile of plaintiff collided with a freight train which completely blocked a crossing. That case, as did the *Peagler case,* involved a deceptive situation. The Court stated: "It was after nightfall and it was raining; and plaintiff testified that his vision was further obstructed, until it was passed, by the lights of a parked automobile about seventy-five feet from the track, facing him on his left, and that he saw the cars only when in a few feet of them, whereupon he applied his brakes and the collision followed, he having time only sufficient to warn his companion."

We do not think the instant case can be distinguished in principle from the recent case of *Jones v. Southern Railway Co.,* 118 S. E. (2d) 880. There, shortly after midnight, a

tractor-trailer driven by plaintiff struck a moving freight train at a rural crossing. The impact was with an empty flatcar, unlighted and of a dark color which blended with the asphalt road. Just before the collision plaintiff was driving 30 or 40 miles an hour in a fog so dense that his visibility was limited to about 50 feet. He first saw the train at that distance, at which time he applied his brakes but was unable to avoid the collision. It was held that he was guilty of contributory negligence as a matter of law in driving too fast under the foregoing conditions. It is true in that case the train was moving but this had no part in the Court's conclusion. We should add that the trial Judge in the instant case did not have the benefit of the *Jones case* as it was decided during the pendency of this appeal.

In *Brown v. Powell,* 198 S. C. 403, 18 S. E. (2d) 212, it was held that the plaintiff's intestate was guilty of gross contributory negligence and recklessness as a matter of law in driving into a standing freight train at night, although a person riding with him testified that he did not see the train across the highway before the collision.

It would serve no useful purpose to review other decisions of this Court involving collisions by motor vehicles with trains blocking railroad crossings. This was done at length in the *Peagler case* and many of these decisions were cited in the *Jones case*. It is sufficient to say that in all of them where recovery was allowed there were important circumstances bearing on the question of contributory negligence and recklessness which are absent in the instant case.

We have not undertaken to determine whether the evidence warrants an inference of recklessness and willfullness on the part of the defendant in failing to give some warning of the presence of this freight train on the track. Assuming that such is the case, it is our view that the plaintiff is barred by his own gross contributory negligence and recklessness and the Court erred in not granting defendant's motion for a directed verdict on this ground.

Judgment reversed for entry of judgment in favor of defendant in accordance with Rule 27.

TAYLOR, Acting C. J., LEGGE and MOSS, JJ., and STEVE C. GRIFFITH, Acting Associate Justice, concur.