18913

Arthur LEDFORD and Audrey Pool, Appellants, v. R. G. FOSTER & COMPANY, Respondent

(167 S. E. (2d) 575)

*Jonathan Z. McKown, Esq.,* of Gaffney, *for Appellants,*

548

*Rufus M. Ward, Esq.,* of *Ward, Howell & Barnes,* of Spartanburg, *for Respondent,*

May 2, 1969.

*Per Curiam.*

In this tort action for damages, the appeal is from an order of the trial court, which will be reported herewith, granting the defendant-respondent's motion for judgment *non obstante veredicto* on the ground that the plaintiff Ledford was guilty of contributory recklessness and willfullness as a matter of law. We have carefully reviewed the record and the order of the lower court; we have also fully considered the briefs of counsel and the authorities therein cited, and conclude that the lower court correctly held that the plaintiff Ledford was guilty of contributory recklessness and willfulness.

The judgment of the lower court is, accordingly,

Affirmed.

Order of Judge Spruill follows:

The above entitled case was tried at Gaffney at the November, 1966, Term of Common Please and resulted in a verdict for $70,000.00 actual damages and $5,000.00 punitive damages. The plaintiff was represented by Mr. Jonathan Z. McKown and the defendant was represented by Messrs. Rufus M. Ward and H. R. Swink. At appropriate stages the defendant made motions for nonsuit and for directed verdict. After verdict the defendant made motions for judgment *n. o. v.* or, in the alternative, for a new trial or a trial *nisi.* These motions were marked "heard" and were thereafter argued in Greenville on January 26, 1967, after a partial transcript of testimoney was available.

The plaintiff, Arthur Ledford, brought this action to recover for injuries to himself and for medical expenses incurred in treatment of his minor son when both sustained injuries in a collision which occurred on May 19, 1964, involving an automobile operated by Ledford and a road sweeper owned by the defendant and being operated by its employee on South Carolina Highway No. 121 between the towns of Saluda and Johnston. Audrey Pool was joined as a party plaintiff by reason of an assignment of a one-hundreth interest in Ledford's claim in order to prevent change of venue to the Federal Court on grounds of diversity of citizenship. In discussing this case, the writer shall refer to Ledford as the plaintiff.

The collision out of which this action arises occurred at about 11:00 A.M. on a dry, clear day. The sweeper of the defendant was proceeding from Saluda towards Johnston and was engaged in sweeping the right side and shoulder of the highway. This sweeping operation stirred up a cloud of dust and the plaintiff, driving in the same direction, drove into this cloud of dust and collided with the sweeper with great force.

The defendant's motion for judgment *n. o. v.* is on three grounds. These are as follows:

"1. There is no evidence of probative value of negligence or recklessness on the part of the Defendant which operated as the proximate cause of any injuries or damages to Plaintiff.

"2. The only reasonable inference that can be drawn from the testimony is that any injuries or damages sustained by Plaintiff resulted solely from his own negligent and reckless conduct.

"3. The evidence shows beyond dispute that Plaintiff was guilty of contributory negligence and wilfulness as a matter of law which bars any right of recovery in this action."

The plaintiff's complaint has two allegations of negligence, gross negligence and recklessness on the part of the defendant. These are as follows:

"(1) In operating the said equipment in the process of sweeping the highway of dirt without displaying any warning signs, signals or devices or providing a watchman to notify persons traveling the said highway that a dangerous situation existed, when the Defendant, R. G. Foster & Company, knew or should have known that the operation of the sweeper equipment constituted a hazard to the safety of others using the said highway.

"(2) In creating a cloud of dust at the bottom of a hill where visibility was limited to the traveling public, obscuring the road machinery in use on the said highway, without any warning whatsoever to the traveling public, when the Defendant knew, or should have known that the operation created a hazard and a sudden emergency to the traveling public."

In addition to a qualified general denial the answer sets out the defense of contributory negligence or recklessness. The specifications are as follows:

"(a) In failing and omitting to keep a proper lookout for existing hazards on the highway and the presence

thereon of the rotary broom of the Defendant, all being clearly visible to a distance of seven or eight hundred feet from the direction of approach of the car Plaintiff was operating;

"(b) In driving the car which Plaintiff was operating at a high, reckless and unlawful rate of speed under the existing conditions;

"(c) In failing to see and observe the dust in the highway and to stop or bring his car under control so that he could stop before running into, over, against and upon the rotary broom of the Defendant;

"(d) In driving into the dust which was obvious and had been obvious for seven or eight hundred feet at a speed greater than that in which visibility would allow his automobile to be stopped;

"(e) In failing to heed and observe the dust on the highway and bring his car under control and stop it before running into the dust and striking the rotary broom of the Defendant;

"(f) In that Plaintiff failed to keep his automobile under proper or indeed any degree of control;

"(g) In that Plaintiff failed to exercise even slight care to avoid an accident;

"(h) In that Plaintiff failed to stop before running into, over, against and upon the rotary broom of the Defendant."

In considering the defendant's motions after verdict, it is, of course, axiomatic that the evidence is to be viewed in the light most favorable to the plaintiff. So viewed it is established and is, in fact, uncontradicted that the defendant had posted no signs and placed no watchman to warn that sweeping or other work was in progress on this particular stretch of highway. Choice McKinney, an eyewitness presented by the plaintiff, who was approaching from the opposite direction and saw the collision, testified that it looked like dust was boiling up out of the highway, that it rose to a height of six to eight feet, and that it covered half of the road. All

parties agree that the highway was straight and that the collision occurred at the bottom at a hill or grade. Both the highway patrolman, a witness for the plaintiff and the plaintiff place the distance from the scene of the accident to the top of the hill or knoll, over which the plaintiff came, as approximately one-tenth mile. The highway patrolman places the debris resulting from the collision some eight feet to the right of the center line and two feet from the right side of the roadway. Both the sweeper and the automobile were totally demolished and came to rest eighty-five feet and forty-two feet respectively from the point of impact. The patrolman testified that there were no brake or skid marks.

The plaintiff testified that the day was dry and that he thought the sun was shining when he topped the hill and saw a cloud of dust at the foot of it. As stated, both the plaintiff and the patrolman estimated the distance from the top of the hill to the scene of the accident as one-tenth mile. The plaintiff said that the dust so covered the right side of the road that he could not see the sweeper but that the left side of the road was clear. He estimated that dust was rising eight feet to ten feet above the pavement. Adjacent to the scene of the accident and to the right of the highway was a pond which had been constructed but not yet filled, and the plaintiff stated that he thought the dust on the right side of the highway was drifting in from this pond site. According to the plaintiff's testimony, he drove to the left side of the highway with the intention of passing the dust on the clear side of the roadway. However, he says that approximately four hundred feet from the dust he saw a truck approaching, turned back to the right, drove into the dust, and collided with the sweeper which he never saw.

The plaintiff testified that he was driving between fifty and fifty-five miles per hour when he topped the hill at approximately one-tenth mile from the dust. Then, or shortly thereafter, he took his foot off the accelerator but he never applied his brakes although they were good. His explanation for not applying his brakes was that he was afraid

that the application of his brakes might throw him to the left side of the highway and into the path of the approaching truck. According to the plaintiff's testimony, his car slowed down little, if any, after he removed his foot from the accelerator because of the grade. From this it would follow, according to his testimony, that he was driving at fifty to fifty-five miles per hour when he drove into the cloud of dust and hit the sweeper. Photographs of the automobile and the sweeper, which are in evidence, indicate a terrific impact.

The defendant concedes that it had no signs or watchman to warn plaintiff or other members of the traveling public of the operation of the sweeper but the defendant urges that the failure to provide signs or watchman was not negligence or, if it were negligence, that it was not the proximate cause of the plaintiff's injury. *Epps v. South Carolina State Highway Dept.*, 209 S. C. 125, 39 S. E. (2d) 198, and *Taylor v. South Carolina State Highway Dept.*, 242 S. C. 171, 130 S. E. (2d) 418, both cases involving passengers, are persuasive authority to sustain this position. However, the writer prefers to base his decision on the question of contributory negligence or recklessness.

There are many cases in South Carolina on the question of contributory negligence or recklessness as a defense. Some of these favor the position of the plaintiff and some favor the position of the defendant. However, the writer has found no case so identical on the facts as to be, in his opinion, necessarily controlling.

The case which the writer feels to be closest on its fact is *Edwards v. Bloom,* 246 S. C. 346, 143 S. E. (2d) 614. In this case plaintiff was blinded by the early morning sun but continued to drive and ran into the rear of an illegally parked automobile. The question of wilfulness was eliminated by the Trial Court and the plaintiff recovered a verdict for actual damages. On appeal the Supreme Court reversed and ordered judgment for the defendant. The following is quoted from the opinion of Justice Moss, now Chief Justice:

"Here, the respondent was driving her automobile over and along Beltline Boulevard, a street with which she was thoroughly familiar, and under the conditions existing that morning which were similar to those which she had previously experienced. She testified that she was proceeding up the hill on said street with the sun directly in front of her and such 'was blinding me so that I couldn't see but just about a car length in front of me' at a speed of 'about 20 to 25 miles an hour, maybe not that fast.' She says that she didn't see the car she struck 'because I couldn't' for the reason that the sun was so blinding that she could see only a little distance in front of her. It thus appears that the respondent was not momentarily blinded by the sun nor was she confronted with a sudden condition which could not have been foreseen.

"The evidence here discloses a failure on the part of the respondent to exercise reasonable care for her own safety. The conclusion is inescapable that her negligence concurred with the negligence of the appellant in proximately producing her injury. This defeats her recovery. It follows that the Trial Judge erred in refusing the motion of the appellant for a directed verdict."

*Jones v. Southern Railway Co.*, 238 S. C. 27, 118 S. E. (2d) 880, was a case where the plaintiff, an experienced truck driver, driving at night and in thick fog, at a speed of thirty to forty miles per hour, hit the twenty-sixth car of a freight train as it was crossing a rural highway. As in Edwards the court eliminated the question of punitive damages and the plaintiff recovered a verdict for actual damages. On appeal the Supreme Court reversed on the grounds that the plaintiff was guilty of contributory negligence as a matter of law. After pointing out special features which had been present in a number of cases where recovery against the railroad had been sustained, the opinion by Justice Legge contained the following:

"Those factors, important to the issues of negligence and contributory negligence or willfulness in the cases just men-

tioned, are absent here. Instead, we find an experienced driver, familiar with the highway and with the location of the railroad crossing, aware of an enveloping fog so dense as to limit his visibility to 50 feet, nevertheless, according to his own testimony, looking only at the white center line, and driving at a speed which, as he himself demonstrated, was too high under those conditions. That he may never have seen a train pass at this crossing before may serve to explain why he took a chance that there would be none on this occasion, but it does not absolve him of negligence in so doing."

*Brown v. Atlantic Coast Line Ry. Co.,* 238 S. C. 191, 119 S. E. (2d) 729, is another case in which a motorist driving in fog ran into a train. In Jones the train was moving across a rural crossing. In Brown, it was stopped across city street in Sumter on a foggy night. Brown recovered a verdict for actual and punitive damages. On appeal the Supreme Court reversed on the grounds that the plaintiff was guilty of contributory negligence and recklessness as a matter of law. The following is quoted from the opinion of Justice Oxner:

"We cannot escape the conclusion that under plaintiff's own testimony he was guilty of contributory negligence and recklessness. He says he did not see this flatcar until he was within a few feet of it. No reason is given for his failure to see it earlier except his statement that the night was foggy and that the dark color of the flatcar blended with the black asphalt street. If, as he apparently claims, conditions were such that he could not see a dark object until within a few feet of it, he was grossly negligent in driving at a speed of 30 miles an hour. On the other hand, if, as defendant's testimony shows, the weather was clear and the street lights made this flatcar plainly visible at a distance of 150 or 200 feet, plaintiff was guilty of gross contributory negligence in failing to see the standing train in time to avoid the collision."

*Wingate v. Seaboard Air Line Ry. Co.,* 244 S. C. 332, 137 S. E. (2d) 258, was an action brought by the plaintiff

to recover for the death of his intestate who was killed at a rural crossing when his automobile was hit by a train. The plaintiff recovered a verdict for actual damages only. However, the plaintiff proved a violation of the Crossing Statute so that defendant was entitled to reversal only if plaintiff's intestate was guilty of gross and wilful negligence. The Supreme Court, in a 4 to 1 decision, found such negligence as a matter of law and reversed. The opinion by Justice Lewis contains the following summary:

"Considering the evidence in the light most favorable to the plaintiff, as we are required to do in determining the issues in this appeal, the conclusion is inescapable that the deceased was guilty of contributory gross negligence and recklessness as a matter of law. The accident occurred on a clear day. The deceased was 36 years of age with no impairment of his sight or hearing. There was nothing to distract his attention. The testimony shows that he approached the crossing, with w h i c h he was thoroughly familiar, at a speed of from 5 to 15 miles per hour and had an ample unobstructed view of an approaching train in which to have seen it and avoided the collision. There is no explanation of his driving into the path of the train under the foregoing circumstances except that he failed to exercise even slight care for his own safety. Under the circumstances such would constitute contributory gross or wilful negligence and bar recovery by the plaintiff."

*Byrd v. Atlantic Coast Line R. Co.,* 249 S. C. 310, 154 S. E. (2d) 1, is another railroad crossing case on the question of contributory recklessness and wilfulness. There the plaintiff's automobile, a family car, was being operated by his wife and was damaged when it was struck by a train at a crossing in the City of Conway. The plaintiff recovered a verdict for actual and punitive damages. On appeal this was reversed by a 4 to 1 decision on the grounds that plaintiff's wife was guilty of gross and wilful negligence as a matter of law. The opinion of Acting Associate Justice G. Badger Baker contains the following:

"Considering the evidence most favorably to respondent the conclusion is inescapable that respondent's wife was guilty of contributory gross negligence and recklessness as a matter of law. There is no evidence that Mrs. Byrd's sight or hearing was impaired, nor was there anything to distract her attention. The record shows that she approached the crossing, with which she was thoroughly familiar, at a slow rate of speed, and had an ample view of the approaching train. Although she said she applied her brakes there is no reasonable explanation of the driving into the path of the train. The only reasonable inference coming from the circumstances is that respondent's wife failed to exercise even slight care and her contributory gross of wilful negligence bars recovery by respondent."

*Thompson v. Brewer,* 225 S. C. 460, 82 S. E. (2d) 685, is a case which bears a considerable resemblance to the one now under consideration. There the plaintiff started to pass a stopped or slowly moving truck which had been visible for ½ mile, saw an approaching vehicle, turned right again, applied his brakes and skidded into the rear of the truck. The trial judge submitted the case to the jury but, after verdict for the plaintiff, he ordered judgment for the defendant and his order for judgment for the defendant and his order for judgment *n. o. v.* was affirmed on appeal. The opinion does not state whether the verdict for the plaintiff was for actual damages only or for actual and punitive damages. However, it states that there was testimony from which the jury could have found wilfulness and recklessness to which appellant's simple contributory negligence would not have been a defense. The following is quoted from the opinion of Justice Stukes:

"We are constrained to agree with the conclusion of the trial judge that the evidence, which we have recounted only in part, estbalished that appellant was guilty of recklessness as a matter of law. His proximity to the slowly moving, or stopped as he said, vehicle ahead, which he had admittedly seen for a half-mile, and continuance at a speed so great

558

that he could not stop in time to avoid the destructive collision evidence reckless disregard of his safety which bars his recovery, even if respondent's truck was stopped in violation of statute."

In Thompson the plaintiff saw the truck which constituted the traffic hazard at ½ mile. Ledford did not have so long a warning but, if we accept his figure of 1/10 mile, and the testimony of the patrolman and the surveyor would indicate a greater distance, he had, in the writer's opinion, ample opportunity to take precautions for his safety. In fact he took none.

Such a cloud of dust as is described by the plaintiff and his witness McKinney is certainly a warning of danger. In this connection it is to be noted that there is no testimony of wind or windblown dust on the day of plaintiff's accident. This being so and the dust blanketing one half of the highway and not the other, it is incredulous that the plaintiff could have thought the source of the dust to be the adjacent pond site. But, the source of the dust being known or unknown to the plaintiff, the fact remains that it blanketed the right half of the road and obscured his vision. Of course, as argued by plaintiff's able counsel, plaintiff could not tell from a distance just how dense the dust was and how greatly it would impair his vision, but he made no effort to reduce his speed and ran into this dust cloud and collided with the sweeper at a speed of 50 to 55 miles per hour.

It is to be conceded that Ledford did not know that the sweeper was in the midst of the dust cloud. However, when he entered the dust cloud at undiminished speed he could not have but known that he would collide with any standing or slow-moving object which was concealed by it. In this connection it is pertinent to quote the following from the order of the trial judge in Thompson:

"It is not necessary that one knowingly subject himself to the certainty of injury to bar recovery. It is sufficient that he knowingly subjects himself to the risk of it."

Ledford, by his own testimony, continued for approximately 1/10 mile at undiminished speed after he saw the dust cloud and before he entered it and hit the sweeper. He says that he, as did the plaintiff in Thompson, turned into the left-hand or passing lane. He did this because the left-hand lane was not obstructed by the dust. At about 400 feet from the dust he saw an approaching vehicle and turned back into the right-hand lane. The plaintiff says that because of the dust cloud he took his foot off the accelerator. At one place in his testimony he indicates that he did this immediately on perceiving the dust. At another he indicates that he did so when about 400 feet distant from it. The plaintiff's actions in taking his foot off the accelerator and in turning to the left indicate that he was aware of the hazard involved. Yet he states unequivocally that he had good brakes but did not apply them. He gives as his reason for not using his brakes that he was afraid their application while going down hill might throw him into the left lane and into the path of the approaching vehicle. Like the plaintiff in Thompson, "Even in hindsight, plaintiff does not find fault with his driving."

In considering the reason which the plaintiff gives for failing to apply his brakes, it is to be noted that the record is devoid of any testimony that the hill was a steep one and the photographs and plat introduced would indicate that the grade was not great. The day was clear and dry. The road, a State primary highway, was straight and there is no testimony that the road surface was not good. To the writer it appears obvious that the plaintiff, without danger in so doing, could have applied his brakes so as to slow his automobile and stop it before he reached the sweeper and its attendant dust. If this should be in error, and the writer does not think it is, there cannot possibly be any question that the plaintiff could have greatly reduced his speed before he ran upon the sweeper which was moving slowly in the same direction as he. When the plaintiff, aware of the hazard ahead of him, did not apply his brakes in an effort to slow

down or stop, he was guilty of contributory recklessness and wilfulness. In Thompson, Justice Stukes said: "There could hardly be surer proof of appellant's recklessness than the nature and results of the collision." The same is true here.

Plaintiff's counsel has presented his case ably and earnestly and the writer has read and considered all the cases cited by him. In his opinion all of these cases are distinguishable and he wishes to comment on only two of them.

*Jeffers v. Hardeman*, 231 S. C. 578, 99 S. E. (2d) 402, was a spring dust storm case whereas ours is not. There the plaintiff recovered actual and punitive damages for injuries received when his truck collided with the rear of defendant's automobile which was stopped on the highway. Plaintiff testified that the gusts of dust were intermittent and of varying degrees of intensity and that he was momentarily blinded before the collision by a sudden and intense gust. The defendant admitted that despite the blowing dust there had been sufficient visibility for him to drive, that he had stopped only because the car in front of him stopped and that he could have pulled off the pavement. Such being the facts the Supreme Court did not find that the plaintiff was reckless as a matter of law in not stopping before the collision.

Ledford, unlike Jeffers, was not driving in dust which suddently increased in density. He saw the cloud of dust from 1/10 mile and failed to stop or slow.

Defendant's counsel relies on *Suber v. Smith*, 243 S. C. 458, 134 S. E. (2d) 404, to sustain the proposition that Ledford could not be charged with more than simple negligence. In Suber the plaintiff's car, while illegally stopped on a rural highway at night, was hit from the rear by defendant. The trial court granted a motion for nonsuit and this was affirmed. In affirming the Supreme Court stated that there was no issue of recklessness to submit to the jury as to the defendant. In the writer's opinion the position of the defendant in Suber is readily distinguishable from that of Ledford.

In Suber there was no evidence as to how or why the defendant hit the rear of plaintiff's car. The evidence was only to the effect that he hit it. In the instant case Ledford has given a detailed account of what transpired from the time he topped the hill until he hit the sweeper.

In its motion for a new trial or a new trial *nisi* the defendant raises certain questions as to the form and the amount of the verdict. However, in view of the fact that the writer feels compelled to order judgment for the defendant, he does not think there is any need to consider these. See *Johnson v. Life Insurance Co. of Georgia,* 227 S. C. 351, 88 S. E. (2d) 260, 55 A. L. R. (2d) 813. Now, therefore,

It is ordered that judgment be entered for the defendant notwithstanding the verdict for the plaintiff.